CORNISH, RESPONDENT, *v.* WOOLVERTON ET AL., AP-
PELLANTS.

(No. 2,091.)

(Submitted March 24, 1905. Decided May 29, 1905.)

*Bills and Notes—Negotiability—Assignment Without Indorse-
ment—Non-negotiable Contracts—Mortgages—Record—In-
nocent Purchaser—Agency—Estoppel.*

Bills and Notes—When Non-negotiable.
   1.  A note providing that if not paid when due, both principal and
   interest coupons shall bear an increased rate of interest, is non-
   negotiable.

Note Secured by Mortgage—When Non-negotiable.
   2.  Where a note is secured by a mortgage of even date with the
   note, and the mortgage provided that the mortgagor should pay the
   taxes and insurance, keep the property in repair, commit no waste,
   etc., and that in default of performance of any covenant the principal
   and interest should become due, and the mortgage be subject to fore-
   closure, at the option of the mortgagee, and that, if foreclosure pro-
   ceedings were commenced, $150 should be allowed as an attorney's
   fee, the note and mortgage are *held* to be parts of the same contract,
   under Civil Code, section 2207, which must be read and construed
   together, thus rendering the fulfillment of the entire contract uncer-
   tain and the note therefore non-negotiable.

Notes—Mortgages—Assignment.
   3.  A mortgage given to secure the payment of a note is but an inci-
   dent, and passes to the assignee of the note.

Mortgages—Liens.
   4.  A mortgage does not convey the legal title to the property mort-
   gaged, but is a mere lien to secure the performance of the contract
   to which it is incident.

Negotiable Instruments—Transfer Without Indorsement—Effect.
   5.  A transfer of a negotiable instrument, payable to order, without
   indorsement, destroys its negotiable character, and the assignee takes
   it subject to all defenses available against it in the hands of the
   payee.

Note Secured by Mortgage—Negotiability.
   6.  *Quaere:* Is a note, though negotiable in form, non-negotiable
   when secured by a mortgage, without regard to whether it contains
   any reference to the mortgage or any conditions contained therein?

Non-negotiable Contracts—Assignment—Notice—Payment to Assignor.
   7.  Under Code of Civil Procedure, section 571, where the maker of
   a non-negotiable contract made for the payment of money or personal
   property, pays the assignor the debt or obligation without notice of
   an assignment of such contract, and in good faith, and takes an ac-
   quittance, such payment constitutes a complete defense to an action
   by the assignee.

Mortgage—Conveyance.
8.  A mortgage is a conveyance within the meaning of Civil Code, sections 1640, 1641 and 1642, though of a chattel interest only.

Mortgage—Assignment a Nullity.
9.  The assignment of a mortgage, independent of the debt, is a nullity.

Mortgage—Evidence of Debt—When.
10.  In the absence of any written evidence of the debt or obligation, the mortgage is evidence both of the debt and the security for its payment.

Mortgage—Assignment—Record—Notice.
11.  Under Civil Code, sections 1640 and 3823, the record of the assignment of a mortgage is notice to a purchaser from the mortgagor, so that payments by him to the assignor are at his own risk, especially in the absence of any showing that when the payments were made the assignor was in possession of the note which the mortgage secured.

Mortgage—Assignment—Notice—Purchaser for Value.
12.  Where, after the assignment of a mortgage had been recorded, a purchaser from the mortgagor paid the debt to the assignor, who executed a release, a subsequent purchaser from the person who paid the mortgage was charged with notice that the assignor had no power to execute the release, and hence was not a purchaser for value free from encumbrances.

Mortgage—Interest—Collection—Agency.
13.  The mere fact that a person acted as the agent of the owner of a mortgage in collecting interest and delivering the canceled coupons, is. not sufficient to show authority to collect the principal and discharge the mortgage.

Mortgage—Collection Agent—Duty to Ascertain Authority.
14.  One paying a debt secured by mortgage to a supposed agent of the owner of the mortgage is bound to ascertain the scope of the agent's authority, otherwise he assumes the risk incident to such failure to make inquiry.

Mortgage—Assignment—Record—Estoppel.
15.  Where an assignee of a mortgage recorded the assignment, and a purchaser of the mortgaged premises afterward paid the debt to the assignor, failure of the assignee to make claim to the ownership of the mortgage until two years after the assignment, and after the assignor had become insolvent, was not sufficient to estop the assignee from enforcing the security, nothing appearing to show that he failed to speak when he should, or that he actively or passively misled the defendants to their prejudice.

*Appeal from District Court, Gallatin County; Frank Henry, Judge.*

ACTION by William Cornish against William W. Woolverton and others.  From a judgment for plaintiff, defendants appeal.  Affirmed.

*Messrs. Bolinger & Stewart* and *Messrs. Hartman & Hartman,* for Appellants.

The paper in suit is non-negotiable because it provides that if not paid when due, both principal and interest shall bear an increased rate of interest. (*Stadler* v. *Bank,* 22 Mont. 190, 200-206, 74 Am. St. Rep. 582, 56 Pac. 111; *Hegler* v. *Comstock,* 1 S. D. 138, 45 N. W. 331, 8 L. R. A. 393; *Adams* v. *Seaman,* 82 Cal. 636, 23 Pac. 53; *Randolph* v. *Hudson,* 12 Okla. 516, 74 Pac. 946.)

The note is non-negotiable for the further reason that it refers upon its face to the mortgage securing it of even date, and thereby makes the mortgage a part of the note requiring both to be construed together as one instrument, so that if there be any provision in the mortgage, which, if written upon the face of the note would render it non-negotiable, the note is thereby rendered non-negotiable. (*Brooke* v. *Struthers,* 110 Mich. 562, 68 N. W. 272, 35 L. R. A. 536; Daniel on Negotiable Instruments, secs. 156, 835; *Donaldson* v. *Grant,* 15 Utah, 231, 49 Pac. 779; *Muzzy* v. *Knight,* 8 Kan. 456; 1 Jones on Mortgages, sec. 71; *Strong* v. *Jackson,* 123 Mass. 60, 63, 64, 25 Am. Rep. 19; *Meyer* v. *Weber,* 133 Cal. 681, 65 Pac. 1110; *Garnet* v. *Myers* (Neb.), 94 N. W. 803.)

The note is non-negotiable for the further reason that there is no allegation in the complaint that it was ever indorsed, simply that it was assigned with the mortgage, and where a note, even otherwise negotiable, has been assigned without indorsement, it alters its negotiable characteristics and features and makes it a non-negotiable instrument in the hands of the assignee. (*McCrum* v. *Corbey,* 11 Kan. 464; *Harrison National Bank* v. *Pease,* 8 Kan. App. 573, 54 Pac. 1038; *Foreman* v. *Beckwith,* 73 Ind. 515; *Seymour & Co.* v. *Layman,* 10 Ohio St. 283; *Sathre* v. *Rolfe* (Mont.), 77 Pac. 431, 433.) An indorsement made subsequent to the transfer or assignment cannot restore the negotiability of the paper which has been destroyed by the assignment without indorsement. (*Goshen Bank* v. *Bingham,* 118 N. Y. 349, 16 Am. St. Rep. 765, 23 N. E. 181; *Bank* v. *Taylor,* 100 Mass. 18, 97 Am. Dec. 70;

*Clark* v. *Whittaker,* 50 N. H. 474, 9 Am. Rep. 286; *Fox* v. *Cipra,* 5 Kan. App. 312, 48 Pac. 452; *Pavey* v. *Stauffer,* 45 La. 353, 12 South. 512, 19 L. R. A. 716.)

The note is also non-negotiable for the further reason that it is secured by a mortgage, and under the laws of Montana the holder of a note secured by mortgage must first exhaust his mortgage security before he may bring suit upon the paper against any party to the note, thus making impossible one of the essential requisites of negotiable paper, viz.: That the holder in due course may hold personally responsible and collect by an action at law the sum due on the paper from any party thereto. Under our statute and the authorities construing it this cannot be done, as the holder of the paper must foreclose the mortgage and exhaust the security, and should he bring suit upon the note direct, ignoring his security, that fact would be a complete defense to a suit on the note. (Code of Civil Proc., sec. 1290; *Brophy* v. *Downey,* 26 Mont. 252, 67 Pac. 312; *Largey* v. *Chapman,* 18 Mont. 563, 46 Pac. 808; *Chicago T. & I. Co.* v. *O'Marr,* 18 Mont. 568, 587, 46 Pac. 809, 47 Pac. 4; *Hibernia Sav. & Loan Assn.* v. *Thornton,* 127 Cal. 575, 60 Pac. 37; *Strong* v. *Jackson,* 123 Mass. 60, 63, 64, 25 Am. Rep. 19; *Donaldson* v. *Grant* (Utah), 49 Pac. 779.)

Until notice of the assignment of the paper was given to appellants, or some of them, all defenses in favor of them or either of them and against the Bunnell & Eno Investment Company which might have been asserted against the assignor of the paper, had it brought suit, may be asserted against the assignee. (*Stadler* v. *First National Bank,* 22 Mont. 190, 211, 213, 74 Am. St. Rep. 582, 56 Pac. 111; *Fox* v. *Cipra,* 5 Kan. App. 312, 48 Pac. 452; *Olson* v. *Northwestern Guaranty Loan Co.,* 65 Minn. 475, 68 N. W. 101; 2 Current Law, pp. 923, 924, and cases cited; *Bank of Stockton* v. *Jones,* 65 Cal. 437, 438, 4 Pac. 418; *Meier* v. *Hess,* 23 Or. 599, 32 Pac. 755, 756; *Horstman* v. *Gerker,* 49 Pa. St. 282, 88 Am. Dec. 501; *Richards* v. *Griggs,* 16 Mo. 416, 57 Am. Dec. 240; *Foster* v. *Carson,* 159 Pa. St. 477, 39 Am. St. Rep. 696, 28 Atl. 356; *Vann*

v. *Marbury,* 100 Ala. 438, 46 Am. St. Rep. 70, 14 South. 273, 23 L. R. A. 325, 330, 331; *Goodale* v. *Patterson,* 51 Mich. 532, 16 N. W. 890; *Van Buskirk* v. *Insurance Co.,* 14 Conn. 141, 36 Am. Dec. 473; *Van Keuren* v. *Corkins,* 66 N. Y. 77; *Brooke* v. *Struthers,* 110 Mich. 562, 68 N. W. 272; *Greene* v. *Warnick,* 64 N. Y. 220; *Sykes* v. *Citizens' National Bank* (Kan.), 76 Pac. 393.)

Recordation of the assignment of the mortgage in suit was not notice to appellants, or either of them so as to invalidate the payment made in good faith to the original mortgagee. (*Jackson* v. *Van Valkenburg,* 8 Cow. 260; *Foster* v. *Carson,* 159 Pa. St. 477, 39 Am. St. Rep. 696, 28 Atl. 356; *Rodgers* v. *Parker,* 136 Cal. 313, 68 Pac. 975, 976; *Adler* v. *Sargent,* 109 Cal. 42, 41 Pac. 799, 800; *Hull* v. *Diehl,* 21 Mont. 71, 78, 80, 52 Pac. 782; *Bamberger* v. *Geiser,* 24 Or. 203, 33 Pac. 609, 611, 612; *James* v. *Morey,* 2 Cow. 246-288, 14 Am. Dec. 475; *Crane* v. *Turner,* 67 N. Y. 437; *Van Keuren* v. *Corkins,* 66 N. Y. 220; *Green* v. *Warnick,* 64 N. Y. 220; *Olson* v. *Northwestern Guaranty Loan Co.,* 65 Minn. 275, 68 N. W. 101.) Recording statutes are harsh and should be strictly construed with reference to the notice they give and the effect which they have. (*Reeves* v. *Hayes,* 95 Ind. 521; *Crane* v. *Turner,* 68 N. Y. 437; *Coll* v. *Hastings,* 3 Cal. 179; *Chamberlain* v. *Belle,* 7 Cal. 293, 68 Am. Dec. 260; *Bird* v. *Dennison,* 7 Cal. 291, 308.)

Ostensible authority, which is such as the principal unintentionally or by want of ordinary care causes or allows a third person to believe another to possess, is sufficient to validate any dealing with such other by the third person, and the respondent is bound by the payment to the Bunnell & Eno Investment Co., if he clothed it with such ostensible authority. (*Prescott* v. *Brooks* (N. D.), 94 N. W. 88, 91; Civil Code, secs. 3073, 3092, 3093, 3110, 3114, 3116; Cal. Civil Code, 2317; *Quinn* v. *Dresbach,* 75 Cal. 159, 7 Am. St. Rep. 138, 16 Pac. 762; *Hare* v. *Bailey,* 73 Minn. 409, 76 N. W. 213; *General etc. Am.* v. *Torkelson,* 73 Minn. 401, 76 N. W. 215; *Bailey* v.

*Anderson,* 75 Minn. 49, 77 N. W. 414; *Lynn* v. *Hanson,* 75 Minn. 346, 77 N. W. 976; *Sykes* v. *Bank* (Kan.), 76 Pac. 393; *Brek* v. *Meeker* (Neb.), 93 N. W. 993; *Fitzgerald* v. *Beckwith,* 182 Mass. 177, 65 N. E. 36.) Respondent is estopped from collecting the paper. (Civil Code, sec. 4634; *Prescott* v. *Brooks* (N. D.), 94 N. W. 88, 91; *Union College* v. *Wheeler,* 61 N. Y. 88, 111; *Bamberger* v. *Geiser,* 24 Or. 203, 33 Pac. 609, 610; *Olson* v. *Northwestern Guaranty Loan Co.,* 65 Minn. 475, 68 N. W. 101; *Fox* v. *Cipra,* 5 Kan. App. 312, 48 Pac. 452, 453; *Brek* v. *Meeker* (Neb.), 93 N. W. 993; *Fitzgerald* v. *Beckwith,* 182 Mass. 177, 65 N. E. 36.)

*Mr. John A. Luce,* for Respondent.

Payment to the original mortgagee or his agent does not discharge the mortgage, even though the assignment of the mortgage is not of record at the time of the payment. (*Dodge* v. *Birkenfeld,* 20 Mont. 115, 49 Pac. 590; *Murphy* v. *Barnard,* 162 Mass. 72, 44 Am. St. Rep. 340, 38 N. E. 29, 31, 32; *Rogers* v. *Peckham,* 120 Cal. 238, 52 Pac. 483; *Mutual Benefit Life Ins. Co.* v. *Huntington,* 57 Kan. 744, 48 Pac. 19; *Woodward* v. *Brown,* 119 Cal. 283, 63 Am. St. Rep. 108, 51 Pac. 2, 8; *Mobley* v. *Ryan,* 14 Ill. 51, 56 Am. Dec. 488; *Ennor* v. *Hodson,* 134 Ill. 32, 25 N. E. 582, 583; *Snell* v. *Margritz* (Neb.), 91 N. W. 274; *Cowing* v. *Cloud,* 16 Colo. 326, 65 Pac. 417-420; *Paris* v. *Moe,* 60 Ga. 90.)

The fact that a note is to draw greater interest after default does not discharge the negotiable quality of the paper. (*Parker* v. *Plymell,* 23 Kan. 403; *Gilmore* v. *Hirst,* 56 Kan. 626, 44 Pac. 603; *Hope* v. *Barker,* 112 Mo. 338, 34 Am. St. Rep. 387, 20 S. W. 567; *Clark* v. *Skeene,* 61 Kan. 526, 78 Am. St. Rep. 337, 49 L. R. A. 190, 191; *Robinson Female Seminary* v. *Campbell,* 60 Kan. 60, 55 Pac. 276; *Hollingshead* v. *Globe Investment Co.,* 8 N. Dak. 35, 77 N. W. 89, 42 L. R. A. 659, 661, and cases cited.)

"Authority to collect interest confers no authority to collect the principal." (7 Ency. 1032, note 61, and cases cited;

*Doubleday* v. *Kress,* 50 N. Y. 410, 10 Am. Rep. 502; *Ilgen-fritz* v. *Newark Mut. Ben. L. Ins. Co.,* 81 Fed. 27; *Smith* v. *Kidd,* 68 N. Y. 130, 137, 23 Am. Rep. 157; *Sax* v. *Drake,* 69 Iowa, 760, 28 N. W. 423; *Trull* v. *Hammond,* 71 Minn. 172, 73 N. W. 642; *Cooley* v. *Willard,* 34 Ill. 68, 85 Am. Dec. 296; *Williams* v. *Walker,* 2 Sand. Ch. 325.)

Any form which manifests an intention to transfer a nego-tiable promissory note is sufficient to constitute an indorse-ment. (*Herring* v. *Woodhull,* 29 Ill. 92, 81 Am. Dec. 296; *Heard* v. *Dubuque City Bank,* 8 Neb. 10, 30 Am. Rep. 811; *Rowe* v. *Haines,* 15 Ind. 445, 77 Am. Dec. 101.)

. The recording of an assignment is notice that the mortgagee· can no longer deal with the mortgaged interest, and that a subsequent discharge or release of the mortgage executed by the mortgagee is invalid. (*Belden* v. *Meeker,* 47 N. Y. 307, 312, 313; 1 Jones on Mortgages, 472, citations 474 and 475; *Decker* v. *Boice,* 83 N. Y. 215.)

"The recording of an assignment of a mortgage is part of the chain of title of which the party must take notice." (*Woodward* v. *Brown,* 119 Cal. 283, 63 Am. St. Rep. 108, 51 Pac. 2, 8; *Purdy* v. *Huntington,* 42 N. Y. 334, 1 Am. Rep. 532.)

No estoppel could exist under the authorities. (*Biddle-Boggs* v. *Merced Min. Co.,* 14 Cal. 368; *Stockman* v. *River-side L. & I. Co.,* 64 Cal. 53, 28 Pac. 116; *Morrill* v. *St. An-thony Falls Co.,* 26 Minn. 222, 37 Am. Rep. 399, 2 N. W. 842; *Plum* v. *Cattaraugus County Mut. Ins. Co.,* 18 N. Y. 392, 72 Am. Dec. 526; *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. 774.) There was no fraud; no turpitude; no misrepresenta-tions; no admissions.

· MR. CHIEF JUSTICE BRANTLY delivered the opinion· of the court.

Action to foreclose a mortgage executed on August 1, 1895, to secure a promissory note for borrowed money, by the de-

fendants William W. Woolverton and his wife, Joanna Woolverton, to the Bunnell and Eno Investment Company, a New Jersey corporation (hereinafter referred to as "the company").

The plaintiff sues as the purchaser for value of the mortgage and note prior to maturity, evidenced by written assignment to him by the company, duly acknowledged, and recorded in Gallatin county on September 28, 1895. The complaint is in the ordinary form, alleging a breach of the contract by a failure to pay the note according to its terms, and asks for a decree of sale of the mortgaged property for the satisfaction of the indebtedness, with interest and costs, including attorney's fees. Copies of the mortgage and note are attached. The following is a copy of the note:

"On the first day of August A. D. 1900, for value received I promise to pay to the order of The Bunnell and Eno Investment Company, the principal sum of Fifteen Hundred Dollars, with interest thereon at the rate of six per cent per annum from August 1, 1895, until maturity, payable semi-annually, according to the tenor of ten interest notes, each for Forty-five Dollars, bearing even date herewith and hereto attached, both principal and interest notes payable in gold coin of the United States of America of or equal to, the present standard of weight and fineness at the Merchants' National Bank in Helena, Montana. This note and these coupons are to draw interest at the rate of twelve per cent per annum after maturity and are secured by mortgage of even date herewith, duly recorded in Gallatin county, of the State of Montana.

"Dated at Helena, State of Montana, on the first day of August, 1895."

The defendants answered, setting up four separate defenses. The first of these it will not be necessary to notice further than to observe that it contains a general plea of payment of the full amount of the note and interest, and a release of the mortgage of record by the company on or about February 26, 1900, and deraignment of title to the defendant Metheny from Woolverton and wife, through Kirk, by deeds of warranty.

The second defense alleges, in substance, that on February 25, 1897, the defendants William W. Woolverton and Joanna, his wife, conveyed the mortgaged property to defendant Ira L. Kirk; that he was at the time of his purchase informed of the encumbrance thereon in favor of the company, and agreed to assume and pay it off as a part of the purchase price; that up to the date of this sale the defendants Woolverton had paid to the company all the interest which had fallen due, and had received the coupons therefor from the company, properly canceled; that after his purchase defendant Kirk had paid to the company all the other installments falling due; that a short time before the principal of the note fell due the said Kirk paid it in full, with interest up to the date of maturity, and received from the company a written release and acknowledgment of satisfaction in full, duly acknowledged for record, and had the same recorded in the records of Gallatin county; that none of the defendants received notice that the plaintiff owned or claimed to own the note and mortgage until May 12, 1902, more than two years after the said principal had been discharged and canceled by his payment; and that the plaintiff should be held to be estopped to claim payment to him, because he failed and neglected to give notice of the assignment to him of the said note and mortgage.

The third defense, in addition to the foregoing, alleges further that the plaintiff never at any time gave notice to any of the defendants that he claimed to be the owner by assignment or other right of the note and mortgage until May 12, 1902, more than two years after the note had been fully paid to the company and its satisfaction of the mortgage entered of record in Gallatin county; that the plaintiff, by his acts and conduct in permitting the company to collect the interest coupons from time to time, had held it out to the defendants as his agent to collect the note and cancel the mortgage, and that for this reason the said company had authority to collect the note and enter the satisfaction of the mortgage, and that by reason of his silence and omission and failure to notify defendants that

the company did not have authority to collect the indebtedness, and by reason of the conduct of the plaintiff in holding out to the defendants that the company did have authority to collect and receive payment of the same, the plaintiff cannot now be heard to say that the company did not have such authority, both to receive payment and discharge the mortgage.

The fourth defense alleges that the plaintiff never gave the defendants, or any of them, notice that he claimed to be the owner of the note or interest coupons or the mortgage until May 12, 1902, more than two years after the indebtedness had been paid and the mortgage had been released and canceled; that by his conduct in permitting the company to collect the interest coupons the plaintiff held it out to the defendants Woolverton and Kirk as his agent with authority to collect and discharge the debt, and that, relying upon its ostensible authority to receive payment, the said Kirk paid the full amount of the debt to it; that during all of the time from August 1, 1895, to August 1, 1900, and for about twenty months after the last-mentioned date, the company was solvent and able to respond in damages; that on or about March 14, 1902, it was found to be insolvent, and a receiver was appointed to wind up its affairs; that the receiver has no assets out of which the defendants might have reimbursement for the moneys paid to the company in discharge of the indebtedness; that plaintiff did not notify the defendants of his purchase of the note and mortgage until the company had been found to be insolvent; that the defendants could and would have secured reimbursement for the payments to the company as aforesaid, or have obtained security therefor, had they received notice in a reasonable time that the company had no authority to receive the payment; and that by reason of plaintiff's negligence in failing to notify defendants of the fact that the company was not his agent in the premises plaintiff is now estopped to say that the company did not have authority to act for the plaintiff and to receive payments made to it in the discharge of said indebtedness and to discharge the mortgage.

To each of the defenses a general demurrer was interposed by the plaintiff. This, after argument, the court sustained, and, the defendants declining to plead further, a decree was entered granting the relief prayed for in the complaint. From this decree the defendants have appealed.

Counsel have confined their discussion in their briefs to the questions arising upon the action of the district court in sustaining a general demurrer to the last three defenses, it being assumed that the first defense, though good in form as a general plea of payment, would be supported in a hearing on the merits only by the facts specifically pleaded in the other defenses. Therefore the correctness of the view of the court as to the sufficiency of that defense is eliminated from the case, and it will not be necessary to consider its action in this connection.

The questions presented for decision are: 1. Is the note in suit negotiable? 2. If not, did plaintiff take subject to the defense of payment made by the grantee of the Woolvertons prior to actual notice of the assignment? 3. Do the facts stated show an agency of the company to receive payment? And 4. Is the plaintiff estopped to demand payment?

1. As to the negotiability of the note in suit. It will be noted that by its terms the principal sum named therein is to bear six per cent interest, payable semi-annually, the installments being evidenced by coupons, each for $45. There is added this clause: "This note and these coupons are to draw interest at the rate of twelve per cent per annum after maturity, and are secured by a mortgage of even date herewith," etc. Does the latter clause render it non-negotiable?

Prior to the adoption of the present Code, which became operative on July 1, 1895, the common-law rule of interpretation under the law merchant was in force in this state, and it was accordingly held that a stipulation for the payment of an attorney's fee in a bill of exchange did not destroy its negotiability. This court followed the line of decisions which sus-

tain both the validity of the stipulation and the negotiability of the instrument in *Bank of Commerce* v. *Fuqua et al.,* 11 Mont. 285, 28 Am. St. Rep. 461, 28 Pac. 291, 14 L. R. A. 588. This holding was based upon the theory that the condition or stipulation for the payment of an attorney's fee could not and did not attach until after maturity, when the instrument, otherwise meeting the requirements of the law merchant as to definiteness and certainty in its terms, had ceased to be negotiable. The Code contains provisions, however, which obviously were designed to set at rest all doubts and uncertainties arising from conflicting decisions of courts under the common-law rule. These are found in sections 3990 to 3997 of the Civil Code. So far as pertinent to the present discussion, they are as follows:

"A negotiable instrument is a written promise or request for the payment of a certain sum of money to order or bearer, in conformity to the provisions of this article." (Section 3991.)

"A negotiable instrument must be made payable in money only, and without any condition not certain of fulfillment." (Section 3992.)

"A negotiable instrument may contain a pledge of collateral security with authority to dispose thereof." (Section 3996.)

"A negotiable instrument must not contain any other contract than such as is specified in this article." (Section 3997.)

Section 3996 was amended by the Act of 1899 (Session Laws of 1899, p. 124) by an addition thereto of the clause, "also a provision for reasonable attorney fee or both." The amended section, however, does not apply to the note in suit (*Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761), so that its character must be determined by the provisions of the Code as they stood prior to the amendment. Indeed, it is manifest that the amendatory Act did not work a change in the provisions of the Code, except in the one particular that it authorizes a stipulation for a reasonable attorney's fee in addition to a stipulation for collateral security, with authority to dispose thereof. The

amendment was evidently made for the purpose of obviating the result of the decision of this court in the case of *Stadler* v. *First National Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111, for it was enacted by the legislature which was sitting at the time the decision was rendered (*Bullard* v. *Smith, supra*), and goes no further than to make a promissory note containing a stipulation for an attorney's fee negotiable. The history of the amendment clearly justifies this conclusion.

In *Stadler* v. *Bank, supra,* it was held that this stipulation rendered a promissory note non-negotiable, because such a stipulation was violative of sections 3992 and 3997, *supra,* in that the stipulation was not certain of fulfillment, and was also a contract other than a specific promise to pay the principal sum named in the note, with interest. The decision was based upon the only construction of which the provisions of the Code are susceptible, as well as upon the decided cases, both state and federal, involving the construction of identical statutory provisions. The case before us is distinguishable from that case only in the character and purpose of the particular stipulation. The provisions of the statute are clearly prohibitory, and apply to all sorts of conditions not certain of fulfillment, whether they attach before or after maturity, and to all sorts of contracts other than the principal promise and those stipulations which fall within the exceptions provided for in the statute.

Many cases are cited by the respondent to support his contention that the particular stipulation does not destroy the negotiability of the note in suit; but all, with one exception, seem to be from states which have not undertaken to fix the rule of negotiability by legislative enactment. It will not be necessary to cite and distinguish these cases. Counsel for respondent relies on *Merrill* v. *Hurley et, al.,* 6 S. D. 592, 55 Am. St. Rep. 859, 62 N. W. 958, as strongly persuasive in favor of the negotiability of the note, if not conclusive. Particular stress is laid upon the fact that the same court which had decided the case of *Hegeler* v. *Comstock,* 1 S. D. 138, 45

N. W. 331, 8 L. R. A. 393, in the later case held a promissory note containing conditions similar to those involved in the case of *Hegeler* v. *Comstock* not to be obnoxious to the provisions of the statute.    *Hegeler* v. *Comstock* was cited and approved in *Stadler* v. *Bank, supra;* but counsel say the latter should not be followed in this case, if *Merrill* v. *Hurley* was correctly decided.    In *Merrill* v. *Hurley,* the supreme court of South Dakota practically overrules and destroys the effect of *Hegeler* v. *Comstock.*    Although the court undertakes to distinguish the former from the latter, the writer confesses that, in his opinion, they are not, on principle, distinguishable, and that the result of the later decision is to overrule the former.    Both of them abound in citations of decisions of courts which are controlled by the common-law rule, and in both of them the purpose and effect of the statutory provisions seem to have been, in a measure, at least, entirely overlooked.

In *Hegeler* v. *Comstock* the uncertain condition held sufficient to destroy the negotiability of the particular instrument was found in the clause, "with interest from date until paid at the rate of ten per cent per annum, eight per cent, if paid when due."    The note in suit in *Merrill* v. *Hurley,* though it contained the clause, "If any part of the principal is not paid at maturity, it shall bear interest at the rate of twelve per cent per annum, payable annually; and, if any interest remains unpaid twenty days after due, the principal shall become due and collectible at once without notice, at the option of the holder"— was held not to be uncertain, or to contain an additional contract within the prohibition of the statute.    In our view, the cases cannot be reconciled, and, by failing to observe the express provisions of the statute and following the analogies of the decisions of courts which are controlled by the common-law rule of interpretation, the court seems to have fallen again into the confusion which it is the purpose of the statute to remove.    As was said in *Adams* v. *Seaman,* 82 Cal. 636, 23 Pac. 54, 7 L. R. A. 224: "These Code provisions were evidently intended to remove, and they do remove, all doubt which conflicting de-

cisions had thrown over such questions as the one arising in the case at bar." Though this latter case and the case of *Stadler* v. *Bank, supra,* had to do with a stipulation for an attorney's fee, liability for which could not attach until after maturity, yet no substantial distinction can be pointed out between such a stipulation and any other which attaches only after maturity, or any contract other than the agreement to pay the principal sum demanded or promised.

The cases cited for illustration and as persuasive authority in the two South Dakota cases do not aid in the solution of the question before us, for the reason that, in our opinion, its solution depends wholly upon the construction to be given to the statute, as is stated in the case of *Adams* v. *Seaman, supra.* The correct conclusion was reached, after an examination of the authorities, in the case of *Stadler* v. *Bank,* and we deem it controlling in this case. It is not certain that the condition referred to will be fulfilled, and it is a contract other than one authorized by the statute. The note is therefore non-negotiable.

For another reason it is non-negotiable. It refers on its face to the mortgage. Section 2207 of the Civil Code provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Under the rule of construction here declared, the conditions and stipulations embodied in the one must be construed to enter into and constitute a part of the other. So that, if the mortgage referred to in the note contains conditions which render the note uncertain as to the amount to be paid and the time of payment, these must be read into the note. The two must be read and construed together to ascertain the nature of the agreement upon which the negotiable character of the note depends. The reference to the mortgage brings to the notice of everyone dealing with the note all the conditions attached, so that, even though it should be held negotiable so far as concerns the conditions expressed upon its face, its negotiable character must be determined by the provisions of the mortgage. This section of the statute

sets at rest any question which might otherwise exist as to the rule of construction applicable. The note and mortgage refer to each other. They are contracts relating to the same subject matter. They are between the same parties. They are both parts of substantially one transaction. Therefore they constitute one contract. (*Meyer* v. *Weber et al.*, 133 Cal. 681, 65 Pac. 1110.)

Apart from the statute, there is a conflict in the decisions, the courts of some states applying the rule declared by the statute, but others holding that the conditions contained in the mortgage do not affect the character of the note secured thereby. In this state the mortgage is but an incident, and passes to the assignee of the note. (Civil Code, sec. 3825.) This, however, does not affect the application of the rule, for it is the general rule in this country that a mortgage does not convey the legal title, but is a mere lien to secure the performance of the contract to which it is incident. The following authorities illustrate the application of the rule: *Brooke* v. *Struthers,* 110 Mich. 562, 68 N. W. 272, 35 L. R. A. 536; Daniel on Negotiable Instruments, secs. 156, 835; *Donaldson* v. *Grant et al.,* 15 Utah, 231, 49 Pac. 779; *Muzzy* v. *Knight et al.,* 8 Kan. 456; 1 Jones on Mortgages, sec. 71; *Strong* v. *Jackson,* 123 Mass. 60, 25 Am. Rep. 19; *Garnett* v. *Myers,* 65 Neb. 280, 94 N. W. 803.

The mortgage in this case contains a number of conditions, among them that the mortgagors will pay all taxes imposed upon the mortgaged property or against the holder of the mortgage; that they will pay, when due, all liens and encumbrances upon the premises, and premiums for insurance therein provided for, or, in default of such payment by the mortgagors, that the mortgagee or his successors may pay the same, or any part thereof, whereupon the amount so paid shall bear interest at twelve per cent per annum, and shall be secured by the mortgage in the same manner as the principal debt thereby secured; that they will keep the property in repair; that they will commit no waste; that they will keep the property in-

sured, or, in case of failure, that the mortgagee may do so at the owner's expense, all premiums so paid to become a part of the indebtedness secured; that in default of payment of interest when due, or in the performance of any covenant therein, the principal and interest shall become due at the option of the mortgagee, who may proceed to foreclose; that no judgment rendered upon the note shall be a bar to foreclosure unless payment be made; and that, if suit for foreclosure be brought, $150 shall be allowed as an attorney's fee, to be added to the amount of the mortgage. Construing these conditions as a part of the note, it is brought clearly within the decision of *Stadler* v. *Bank, supra,* and the cases last cited, and is nonnegotiable.

Again, the complaint alleges that the note and mortgage were for a valuable consideration "sold, assigned, transferred, and set over" to the plaintiff by the company. A negotiable instrument, payable to order, must be indorsed by the payee, in order to preserve its negotiability in the hands of a subsequent holder. A transfer without indorsement destroys its negotiable character, and the assignee takes it subject to all such defenses as might have been available against it in the hands of the payee. (*Sathre* v. *Rolfe,* 31 Mont. 85, 77 Pac. 431; *Helena National Bank* v. *Rocky Mt. Bell Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; *Foreman* v. *Beckwith,* 73 Ind. 515; 1 Daniel on Negotiable Instruments, sec. 741.)

The contention is also made by the appellants that a note, though negotiable in form, if secured by mortgage, is not negotiable in this state, even though it contains no reference to the mortgage, and without regard to any conditions contained in the latter. This contention is based upon the provisions of our statute (section 1290, Code of Civil Proc.), which declares that "there is but one action for the recovery of debt, or the enforcement of any right secured by mortgage upon real estate or personal property." In support of this contention counsel cites, among other cases, *Brophy* v. *Downey,* 26 Mont. 252, 67

Pac. 312, and *Largey* v. *Chapman,* 18 Mont. 563, 46 Pac. 808.    These cases are not directly in point, as the question here involved was not before the court in either of them. Counsel in the argument did not dwell upon this phase of the case, nor press it for decision.    Inasmuch as the question involved is one of importance, we prefer to reserve a decision of it until a case arises in which we may have the advantage of full argument.    What we have already said as to the first three contentions made by appellants is determinative of this feature of the case.

Did the plaintiff take the note subject to the defense of payment by Kirk prior to actual notice of the assignment?    Section 571 of the Code of Civil Procedure provides: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defense existing at the time of, or before, notice of the assignment; but this section does not apply to a negotiable promissory note or bill of exchange, transferred in good faith and upon good consideration, before maturity."    This section was considered by this court, and construed in connection with sections 690, 691, 692, and 698 of the Code of Civil Procedure, and also section 1982 of the Civil Code, relating to the transfer of non-negotiable contracts for the payment of money or personal property, in *Stadler* v. *Bank, supra.*    The conclusion reached was that section 571 was rendered necessary by the enactment of section 570, which requires all actions to be brought and prosecuted in the name of the real party in interest.    At the common law the assignee of a non-negotiable contract could not sue in his own name, but in the name of the assignor only. The change having been wrought by section 570, it became necessary to enact some such provision as section 571 to declare and protect the rights of the defendant as they existed at the common law, notwithstanding the provision of section 570. It was further held that section 571 is not in conflict with section 1982 of the Civil Code, and that neither in any way enlarges the scope of the other or affects the purpose which it

was intended to accomplish. The purpose of the latter is, as was there held, to protect the assignee of a non-negotiable contract against counterclaims, including set-offs, alleged as defenses, unless they fall within the provisions of sections 690, 691, 692, and 698, *supra;* that is, unless they are in existence and available at the date of the assignment. Its purpose is not to affect in any way or change the rights of the defendant arising out of new dealings or agreements with reference to the particular contract had with the creditor subsequent to the assignment, but prior to notice thereof to the defendant. As has been said, the right to avail of these defenses is protected by section 571, and, whatever the rights of the defendant would have been at the common law as against the assignee, they have been preserved under this section. The court, speaking through Mr. Justice Pigott, quotes with approval from *Beckwith* v. *Bank,* 9 N. Y. 211: "Section 112 was intended only to introduce such alterations in the mode of protecting them [the substantial rights of the parties] as were rendered necessary by the provisions of sections 111 and 113, which require in most cases the real party in interest to be the plaintiff. The first branch of the section will have its full and appropriate meaning if we regard it as providing that 'in the case of an assignment of a thing in action the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment,' which would have been available to the defendant had the action been brought in the name of the assignor. In other words, the provision is that the substantial rights of the defendant shall not be affected by the substitution of the assignee as plaintiff in place of the assignor." Then, after observing that section 112 of the New York Code is identical with section 571, *supra,* and that sections 111 and 113 are similar to section 570, *supra,* the opinion quotes from *Myers* v. *Davis,* 22 N. Y. 489, as follows: "The alteration of the practice allowing the beneficial owner of a chose in action, not negotiable at law, to sue thereon in his own name, does not change the actual rights of the parties to

any assignment of it.  The defendants in this action are therefore entitled to the same defense which they would have had if the former rule had continued to prevail, and this action had been brought in the name of Watrous and Lawrence (assignors), and to no other or different defense.  The assignee would have been protected in his equitable rights, notwithstanding the non-negotiable nature of the contract, to the same extent that he is entitled to have them protected now that he can prosecute in his own name.  The change effected by the Code is simply as to the form in which the action is to be carried on."

From these provisions, thus construed, this rule is therefore deduced: That the assignee of a non-negotiable contract made for the "payment" of money or personal property, under section 1982, *supra,* takes all the rights of the assignor, subject only to the equities and defenses existing in favor of the maker at the time of the assignment, and that matters arising out of subsequent dealings between the maker and assignor, not relating to the contract, but which would be defenses in an action by the assignor, are not available as against the assignee, even though notice of the assignment be not given to the maker; but that in order to cut off defenses arising out of dealings with relation to the contract itself between the maker and assignor after the assignment—such as payment, release, etc.— notice of the assignment is necessary; so that under section 571, *supra,* if the maker, without notice of the assignment, in good faith pays the assignor the amount of the debt or obligation, and takes an acquittance, this constitutes a complete defense to a suit by the assignee.

2. What was the effect of the payment to the company by Kirk after record of the assignment of the note and mortgage to the plaintiff?

A mortgage is a conveyance within the meaning of the record laws of this state (sections 1640-1642, Civil Code), though it is a conveyance of a chattel interest only. (Civil Code, sec. 3810 *et seq.; Hull* v. *Diehl,* 21 Mont. 71, 52 Pac. 582; *Mueller* v. *Renkes,* 31 Mont. 100, 77 Pac. 512.)  Title to it

passes to an assignee by assignment of the debt or obligation
secured by it (section 3825, Civil Code) ; for the mortgage is.
but an incident—a security—and, independent of the debt,.
has no assignable quality.   Such an assignment is a mere nul-
lity.   (*Rader* v. *Ervin,* 1 Mont. 632; *Polhemus* v. *Trainer,* 30
Cal. 686.)   Where there is no written evidence of the debt or
obligation, the mortgage is evidence both of the debt and the
security for its payment.   Nevertheless the debt is the prin-
cipal thing, and the title to the mortgage must follow an as-
signment of it.   (Section 3825 Civil Code.)

The appellants contend that, though the assignment of the
mortgage to Cornish was recorded long before the purchase and
payment by Kirk to the company, this gave constructive notice
to those persons only who derived title to the mortgage from
the company, and therefore that the record was not notice to
Woolverton, or to Kirk, so as to invalidate Kirk's payment to
the company.   The ground of this contention, as counsel as-
serts, is that section 3823 of the Civil Code expressly declares
that the record of the assignment gives notice only to persons
deriving title from the assignor.   This section provides: "An
assignment of a mortgage may be recorded in like manner as
a mortgage, and such record operates as notice to all persons
subsequently deriving title to the mortgage from the assignor."

Section 3824, however, provides further: "When the mort-
gage is executed as security for money due, or to become due,
on a promissory note, bond or other instrument, designated in
the mortgage, the record of the assignment of the mortgage is
not, of itself, notice to a mortgagor, his heirs, or personal rep-
resentatives, so as to invalidate any payment made by them,
or either of them, to the person holding such note, bond or other
instrument."   Section 3823 does not declare that the assign-
ment shall be notice to such persons only as derive title from
the assignor; while from the language of section 3824 there
arises a strong implication that such a record does operate as
notice to a mortgagor, so as to invalidate any payment made
by him, his heirs or personal representatives, to anyone not

holding the note, bond, or other instrument. Under section 1640, *supra,* the record is notice to all persons of the contents of the assignment.

Construing all these provisions together, the conclusion seems inevitable that the record operates as notice to all persons dealing with the assignor in any capacity whatever, with the exception of those designated in section 3824; and even these are protected only when the assignor holds the evidence of the debt. Such being the case, the payment to the company by the Woolvertons would have been ineffectual to discharge the mortgage in the absence of a showing by appropriate allegation that the company held the note. Much less, then, was the encumbrance discharged by payment made by Kirk, for, so far as the allegations show, the company was not at the date of the payment in possession of the note; nor is he included within the class who might have discharged the mortgage by payment to the holder of the note prior to actual notice of the assignment. His payment, therefore, must be regarded as having been made at his own risk, and as being wholly ineffectual to discharge the mortgage.

The construction of these provisions is attended with some difficulty; but the conclusion stated is supported by the supreme court of California under identical statutes (*Rodgers* v. *Peckham,* 120 Cal. 238, 52 Pac. 483; *Woodward* v. *Brown,* 119 Cal. 283, 63 Am. St. Rep. 108, 51 Pac. 2, 542), and by the courts of other states having similar provisions. (1 Jones on Mortgages, sec. 480; *Van Keuren* v. *Corkins et al.,* 66 N. Y. 77; *Brewster* v. *Carnes,* 103 N. Y. 556, 9 N. E. 323; *Olson* v. *Northwestern Guaranty Loan Co.,* 65 Minn. 475, 68 N. W. 100; *Williams* v. *Keyes,* 90 Mich. 290, 30 Am. St. Rep. 438, 51 N. W. 520; *Larned* v. *Donovan,* 155 N. Y. 341, 49 N. E. 942; *Viele* v. *Judson,* 82 N. Y. 32.)

In purchasing the mortgaged property from Woolverton, Kirk purchased it with notice of the contents of the assignment by the company to the plaintiff, for he was bound to read the record and ascertain the facts shown by it. It was a clear in-

dication to him that the assignment had been made, and that he could not discharge the mortgage by paying the debt secured by it to the company. Nor was the company authorized to release the mortgage upon payment to it by him, so as to make the defendant Metheny an innocent purchaser for value, free from the encumbrance of the mortgage. Metheny, in dealing with the mortgaged property, had full notice of the fact that payment to the company would not discharge the mortgage. He was therefore not entitled to rely upon the release executed by the company, but was equally bound with Kirk by the knowledge derived from the record.

The mortgage in the hands of the plaintiff was therefore a valid lien upon the property in the hands of Metheny, unless the facts alleged in either the third or fourth counts of the answer, or both of them, constitute a defense.

3. The allegations of the third paragraph of the answer, intended to show an agency in the company to collect the indebtedness and discharge of the mortgage, are wholly insufficient for that purpose. In substance, it is alleged that the plaintiff gave no notice to the defendants of his ownership of the mortgage, and, besides, permitted the company to collect the installments of interest from time to time as they fell due. As we have seen, the assignment was recorded. This was notice to both Kirk and Metheny that they could not safely pay to anyone but the plaintiff or his duly authorized agent. The mere fact that the company acted as the agent of the plaintiff in collecting the interest and delivering the canceled coupons is not sufficient to show authority to collect the principal and discharge the mortgage. (*Stark* v. *Olsen,* 44 Neb. 646, 63 N. W. 37.) If, in addition to this fact, it were alleged that the company, at the time of payment, had the note in its possession, the inference might be permissible that it was the agent to collect it. In dealing with a supposed agent, however, Kirk was bound to ascertain the scope of its authority; otherwise he assumed the risk, and he and his grantee must

suffer the consequences. (*Dodge* v. *Birkenfield,* 20 Mont. 115, 49 Pac. 590.)

In *Smith* v. *Kidd et al.,* 68 N. Y. 130, 23 Am. Rep. 157, it is said: "Neither was the defendant warranted by the fact of the attorney being authorized to collect the interest in inferring that he was also authorized to receive the principal. Such authority, in the absence of direct proof, may, in some cases, be inferred from the attorney having possession of the bond and mortgage, but in such cases it is incumbent upon the debtor who makes payments to the attorney to show that the securities were in his possession on each occasion when the payments were made, for the withdrawal of the securities would be a revocation of the authority." In the same case it is also said: "If money be due on a written security, it is the duty of the debtor, if he pay to an agent, to see that the person to whom he pays it is in possession of the security. For, though the money may have been advanced through the medium of the agent, yet, if the security do not remain in his possession, a payment to him will not discharge the debtor."

Cornish, the plaintiff, had done all in his power to notify all persons dealing with the company with reference to the mortgage that he was the owner of it. Under the circumstances, payment by Woolverton would not have been effectual, for, so far as the answer shows, the company was not in possession of the security. Much less can Kirk and Metheny claim that the debt was discharged by Kirk's payment. That payment must be made a second time by Kirk is a distinct hardship upon him; but, so far as the allegations of the answer show, it would be equally as great a hardship to deny the plaintiff the right to collect the money paid by him for the mortgage. The plaintiff did not fail to take the precautions necessary to protect himself. Kirk was guilty of negligence in this behalf, and of the two, he, being in fault, must suffer.

4. Nor do we think the facts alleged in the fourth paragraph of the answer sufficient to estop the plaintiff. Having given notice of the assignment in the manner provided in the

statute, he was not thereafter bound to do anything to protect the defendants against the criminality and fraudulent conduct of the officers of the company. Nor, after the company became insolvent, was he compelled to proceed at once to enforce the collection of the debt. So far as the record shows, he knew no more of the condition of the affairs of the company than did the defendants; and, if he had known, it did not follow that he knew of the payment by Kirk, and the release of the mortgage by the company. His recorded assignment being notice of his rights, he was not bound to take notice of subsequent dealings of the company with any of the defendants with reference to the mortgage; and while his delay in pursuing his debtor may seem peculiar, or even suspicious, this is not sufficient to estop him. He had the full time allowed by the statute of limitations in which to bring his action. There is nothing alleged in the answer tending to show that he failed to speak when he should, or that he actively or passively misled the defendants, or any of them, to their prejudice by anything that he did or failed to do.

For these reasons we think the action of the court below in sustaining the demurrer was correct, and that the judgment should be affirmed.

*Affirmed.*

Mr. Justice Milburn and Mr. Justice Holloway concur.