SECURITY COMPANY, Appellant, v. JOHN T. GRAYBEAL *et al.*, Appellees.

1. **Accounts**: EVIDENCE: AGENT'S LOAN REGISTER. A book kept by a loan agent, with headings at the top of each page so arranged that the entries thereunder will present a record of loans made, the names of the mortgagor and mortgagee, the description of the property mortgaged, the dates when principal and interest become due,

and whether they have been paid, and the same remitted to the mortgagee, is not a book of accounts within the meaning of section 3658 of the Code, providing for the admission of books of account in evidence.

2. **Agency:** EVIDENCE. Where a mortgagor, under a mortgage providing that the interest and principal were payable to the mortgagee at a town named in a distant state, paid the several installments of interest, as they matured, to the agent who had negotiated the loan, taking his individual receipt therefor, and knowing that such payments had to be remitted to the mortgagee before the interest coupons could be obtained, and, before the maturity of such mortgage, negotiated a new loan for a larger sum through said agent, out of which he authorized said agent to pay off the former note and mortgage, but never inquired whether the money for that purpose had been remitted to the mortgagee, nor asked for the surrender of the bond and mortgage held by said mortgagee, and it appeared that said mortgagee never authorized said agent to collect said mortgage, that it was not yet due, that it was not in the hands of said agent when it was alleged to have been paid, and that while there was considerable business transacted between the agent and said mortgagee, yet that in nearly all cases the latter refused to send mortgages or interest coupons to said agent until the money therefor had been received at the mortgagee's home, where they were all made payable, *held*, that the agent having absconded with the money obtained for the mortgagor under said second mortgage, without said first mortgage having been paid, he must be deemed the agent of the mortgagor, and the payment made to said agent as above stated was no defense to an action for the foreclosure of the first mortgage.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, JR., Judge.

TUESDAY, MAY 24, 1892.

ACTION to foreclose a mortgage upon certain real estate in Polk county, Iowa. The court below dismissed the plaintiff's petition and rendered a judgment against it for costs. The plaintiff appeals.— *Reversed.*

*Kauffman & Guernsey,* for appellant.

*Barcroft & Bowen, A. N. Porter,* and *S. S. Cole,* for appellees.

KINNE, J.—December 28, 1878, the defendant John T. Graybeal, being the owner of certain land in Polk county, Iowa, made a loan of eight hundred dollars thereon of William Bolles of Hartford, Connecticut. The loan was to run for five years, and was secured by mortgage on said land, in the execution of which his wife joined. October 28, 1882, said Bolles sold and assigned said note and mortgage to the plaintiff. Some time subsequent to the execution of the mortgage (the exact date does not appear) Graybeal and wife sold the land to the defendant Mally. To the plaintiff's petition for a foreclosure of the mortgage, which is in the usual form, the defendants plead that on June 26, 1883, the defendant John T. Graybeal paid to said Bolles, the then owner of the note and mortgage, eight hundred and sixty-three dollars and thirty-three cents, the amount then accrued thereon. It seems Graybeal made application for the loan to and procured it through one Hugh R. Creighton, then a loan agent at Des Moines. After this mortgage had been executed, the defendant Graybeal placed another mortgage on his land, and also became indebted to various parties, some of whom had reduced their claims to judgment. For the purpose of paying off his indebtedness, he made application to said Creighton for another loan of three thousand dollars on the land, given as security in the former mortgage, as well as upon other lands. This application was made April 28, 1883, and it is claimed by Graybeal that Creighton was to make the three thousand dollar loan, procuring the money wherever he could, and to pay off the Bolles and the other mortgages and certain judgments out of the money, and the balance was to be turned over to him. June 26, 1883, it is claimed that Creighton had placed the three thousand dollar application and procured the money, but this is by no means clear from the testimony. Graybeal

and Porter testify that the arrangement was that the Bolles loan was to be paid immediately on the obtaining of the money on the three thousand dollar loan. It appears that the three thousand dollars was not sufficient to pay all the incumbrances on the land, and the matter was pending unsettled between Graybeal and Creighton for nearly two years, awaiting the raising of enough money by the former to satisfy all the lienholders. As near as can be ascertained from this record, this was accomplished in December, 1884. No settlement, however, was had by Graybeal with Creighton, and June 3, 1885, the latter absconded. Creighton had not paid to Bolles any money on account of his mortgage.

I. To establish the fact that Creighton in receiving so much of the three thousand dollar loan as was required to pay off the Bolles loan acted as the agent of Bolles, the defendants introduced in evidence Creighton's book wherein his loans were registered, in which there was an entry indicating the payment of the Bolles loan. The theory on which the loan register was introduced we must presume was that it was a book of account. Our statute provides that "books of account containing charges by one party against the other, made in the ordinary course of business, are receivable in evidence," etc., when the following circumstances appear: *First.* "The books must show a continuous dealing with persons generally, or several items of charge at different times against the other party in the same book or set of books." *Second.* "It must be shown by the party's own oath or otherwise that they are his books of original entries." *Third.* "It must be shown in like manner that the charges were made at or near the time of the transaction therein entered, unless satisfactory reasons appear for not making such proof." *Fourth.* "The charges must also be verified by the

1. ACCOUNTS:
   evidence:
   agent's loan
   register.

party or clerk, who made the entries, to the effect that they believe them just and true; or a sufficient reason must be given why such verification is not made." Code, section 3658. This book was not admissible, for the reason that the preliminary proof required by statute was not made. It was not shown that the book was an account book, or that the charges, if any, therein were made in the usual course of business; nor was a single requirement of the statute as to preliminary proof complied with. *Karr v. Stivers*, 34 Iowa, 123; *Ford v. St. L., K. & N. W. R'y Co.*, 54 Iowa, 723, 7 N. W. Rep. 126; *Cummins v. Hull*, 35 Iowa, 253. The book admitted in evidence was so ruled as to show "No. of Loan," "Name of Mortgagor" and "Post Office," "County," "Name of Mortgagee, Post Office, and Where Payable," "Description of Property Mortgaged," "Mortgage Record," "No. of Application," "Date of Loan and Time," "Coupon Nos.," "Principal and Interest, When Due and Paid," "Date Remitted," "Insurance Co. Amount," "Remarks." These constituted headings to the page, under each of which the proper entries could be made. It is clear that such a book has few, if any, of the characteristics of an account book. It contains no charges. It does not show a continuous dealing with persons generally. It is not such a book as the statute contemplates as a book of accounts. It is simply a private memorandum book, kept by Creighton for his own use and convenience in the transaction of his business. *Hancock v. Hintrager*, 60 Iowa, 374; *Fitzgerald v. McCarty*, 55 Iowa, 702; *Van Every v. Fitzgerald*, 31 N. W. Rep. 264, 21 Neb. 36; *Pollard v. Turner*, 35 N. W. Rep. 192, 22 Neb. 366; *Laboree v. Klosterman*, 49 N. W. Rep. (Neb.) 1102.

II. It is clear to our minds that in procuring the three thousand dollar loan Creighton was the agent of Graybeal. The latter made an application to him for the loan. He was to procure

2. AGENCY: evidence.

the money wherever he could do so, and with its proceeds pay off various liens upon the property; among others, the Bolles loan. He held the fund received on the three thousand dollar loan as Graybeal's agent. Creighton could not, while holding this money as Graybeal's, make it the money of Bolles or the plaintiff, and thus work a payment of the plaintiff's mortgage, except by sending it to the plaintiff, unless the plaintiff or Bolles, knowing that Creighton had the money in his hands, consented to some other application of it, or so acted as in law would amount to a consent that Creighton should retain the money as plaintiff's agent. *Pease v. Dibble*, 57 Ga. 446; *Price v. White*, 70 Ga. 381; *Bradford v. Arnold*, 33 Tex. 412; *Phillips v. Mayer*, 7 Cal. 81. It does not appear that Bolles or the plaintiff had any knowledge whatever that Graybeal was negotiating the three thousand dollar loan, and neither of them were in any way connected with the transaction.

Furthermore, there is no evidence that Creighton was ever authorized to collect the Bolles loan. It was not yet due, and, so far as Bolles was concerned, there was no occasion to collect it, or to authorize any one so to do. Indeed it is not claimed that Bolles ever gave Creighton any special authority to collect the loan. It is insisted, however, that the letters which passed between Bolles and Creighton show a general authority to collect all his loans, whether due or not, but the evidence does not sustain this theory. Creighton was conducting an independent business—that of a loan agency. *New England Mortgage Security Co. v. Townes*, 1 South. Rep. (Miss.) 242. It appears that Bolles at all times during his dealings with Creighton reserved and exercised the right of accepting or rejecting Creighton's applications for loans; that in nearly all cases Bolles refused to send notes, mortgages or interest coupons to Creighton until the money had

first been paid to him; and that all these loans were payable at Hartford, Connecticut. October 15, 1882, and prior to the expiration of this loan, Bolles advised Creighton that all his business, including the loan in question, had been placed in the plaintiff's hands. Graybeal testifies that he knew Bolles lived in the east, and that the loan was payable at Hartford. When he paid interest to Creighton he got receipts in Creighton's name. He knew Creighton had to send the interest money east before he could get the interest coupons. He never inquired of Creighton as to whether he had remitted the money for the Bolles loan to Bolles or the plaintiff. He never asked Creighton to surrender to him the Bolles bond and mortgage, nor did he ever ask Bolles or the plaintiff for them. He did not even recollect the name of the party who held the mortgage against him. No one told him that Creighton was acting as agent for Bolles. He never asked for the interest coupons when he paid the interest to Creighton. There is no pretense that Creighton had the Bolles papers in his hands at the time it is claimed the loan was paid. The general rule is well settled that one paying to an agent the amount due upon negotiable paper, when the agent does not have the papers in his possession, does so at his peril. *Haines v. Pohlmann*, 25 N. J. Eq. 179; *Smith v. Kidd*, 68 N. Y. 130; *Brewster v. Carnes*, 9 N. E. Rep. 323, 103 N. Y. 556; Jones on Mortgages, sec. 964; Mechem on Agency, section 373. And it has often been held that authority of an agent to receive the interest on a note does not authorize one to pay him the principal. Mechem on Agency, section 379, and cases cited; Jones on Mortgages, section 964. This doctrine also finds support in *Fisher v. Lodge*, 50 Iowa, 459; *Draper v. Rice*, 56 Iowa, 114. And in *Tappan v. Morseman*, 18 Iowa, 500, the doctrine is thus stated by Judge DILLON: "So that it may be laid down as a general rule that, if a debtor owing money on a

written security pays to or settles with another as an agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the security. If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the security."

The evidence also shows that Graybeal never received the interest coupons from Creighton at the time he paid the interest, and the former says he supposes this was because he had to remit the money to the party holding the bond and coupon before he could get the coupon. It appears from the testimony of witness, Porter who seems to have been assisting Mr. Graybeal in this loan transaction, that in a statement given him for Graybeal in the winter of 1884 by Creighton, the latter had charged Graybeal interest on this Bolles loan up to November 17, 1884,—a year after Graybeal and Porter claim it was paid by the application of a part of the three thousand dollar loan. True, Porter says he did not examine it, but it clearly indicates that the fact that the Bolles loan had not been paid was called to the attention of Graybeal and Porter by Creighton over a year after he had, as they claim, received the proceeds of the three thousand dollar loan. We have carefully examined all the testimony, and are fully satisfied that Creighton was not in fact the agent of Bolles to receive this money; that neither Bolles nor the plaintiff did anything to induce Graybeal to believe that Creighton was authorized to receive the money on the Bolles loan. There are no facts in this case from which Graybeal had a right to suppose that Creighton had authority to receive the money on the Bolles mortgage. In principle this case is like *Hippee v. Pond*, 77 Iowa, 236. See, also, *Artley v. Morrison*, 73 Iowa, 132.

The judgment of the court below is REVERSED.