(No. 5173. December 24, 1929.)

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation, Appellant, v. LEWIS L. FOLSOM, CHARLOTTE A. FOLSOM, His Wife, and THE FIRST NATIONAL BANK OF IDAHO, a Corporation, Respondents.

[283 Pac. 609.]

Clarence T. Ward and Alex M. Winston, for Appellant.

Martin & Martin, for Respondents.

WM. A. BABCOCK, Commissioner.—This is a suit brought by appellant, Prudential Insurance Company of America, a corporation, in the district court of Ada county, against Lewis L. Folsom, and others, to foreclose a mortgage given March 1, 1917, by said Lewis L. Folsom and his wife, to the American Freehold Land Mortgage Company, of London, Ltd., hereinafter designated as the Mortgage Company, on 260 acres of land in Ada county, to secure payment of a promissory note signed by the mortgagors payable to said mortgage company, or order at the office of W. Scott Neal, Boise, Idaho, for the sum of $15,000, due and payable ten years after date, with interest at seven per cent per annum, payable on the first day of April each year, with a provision in the note and mortgage to the effect that if default be made in payment of interest when due, or taxes and water assessments levied against the land, the mortgagee, at its option, might declare the principal of the note due and payable, and enforce payment thereof by foreclosure proceedings.

Sixty acres of land covered by the mortgage were released of record by the mortgagee February 25, 1919. On November 20, 1920, the note was indorsed by the payee therein and the mortgage assigned to the appellant. This action

was for the foreclosure of the mortgage on the remaining 200 acres.

The complaint is in the usual form, alleging nonpayment of taxes and assessments on the land and the election of the appellant to declare the principal of the note due by reason of such default, and alleging that nothing had been paid on the principal of the note.

The answer of the defendants admitted the execution and delivery of the note and mortgage. As a partial defense to the complaint the answer alleged payment of $3,600 on the mortgage made on or about the 12th of February, 1919, to W. Scott Neal as the agent of the mortgage company.

The cause was tried by the court with a jury sitting in an advisory capacity to pass on the question of whether or not payment of $3,600 had been made to W. Scott Neal. The finding of the jury was that such payment had been made. The court adopted this finding and found that credit for that amount should be given the respondent Folsom, and that appellant was entitled to foreclosure of the mortgage for the balance due. Decree was entered accordingly, from which judgment this appeal is taken by the Prudential Insurance Company.

For a proper consideration and determination of the questions presented by the appeal it will be necessary to review to a certain extent the evidence as presented by the record.

At the trial, plaintiff, after making formal proof, rested. Thereupon respondent Folsom was called as a witness in his own behalf, and testified substantially as follows: That in the latter part of January, 1919, he sold to one W. C. Cleveland, since deceased, a tract of land consisting of 140 acres for the sum of $21,000, which land included sixty acres of land embraced in and described in the mortgage in question, and an additional eighty acres owned by respondent and mortgaged to the state of Idaho for $4,800; that the contract of sale between him and Cleveland provided that Cleveland should pay the sum required to satisfy the mortgage to the state of Idaho on the eighty acres, and the

amount required to secure a release from the mortgage involved in this suit on the sixty acres; that the said sums so paid by Cleveland should be deducted from the purchase price of the land; that he procured the loan represented by the mortgage sought to be foreclosed in this action from one W. Scott Neal, who was the agent of the mortgage company; that he had always paid the interest on the loan to Mr. Neal; that in order to arrange for the release of the sixty acres from the mortgage, respondent and Mr. Cleveland, on or about February 1, 1919, went to Mr. Neal's office and in a conversation had with him, Mr. Neal told them that the sixty acres would be released on payment of $3,600; that he afterwards saw the release of the sixty acres in the possession of Mr. Cleveland; that he did not see Mr. Cleveland pay the money to Mr. Neal, but at the time of his final settlement with Mr. Cleveland, had on or about April 19, 1919, he and Cleveland went to Mr. Neal's office for the purpose of making their settlement; that Mr. Neal informed him at that time that the money had been paid for the release; that Mr. Neal did the figuring; and that in the settlement the $3,600 was deducted from the purchase price of the land as well as the sum of $4,858.50 paid by Mr. Cleveland for the release of the eighty acres.

Mr. Folsom continued to pay the interest on the full amount of the note and mortgage after this purported conversation in Mr. Neal's office up to 1925, and, in explanation thereof, says that he did so because notices from the mortgage company called for that amount, and he simply paid what they asked for, although he testified he was in straitened circumstances and hard up financially during the period in which he made these payments of interest.

J. B. Eldridge, the attorney who drew the contract of sale of the land by Folsom to Cleveland, testified that he did not retain a copy thereof, but, as he recalled the terms of the contract, there was a provision that Cleveland was to pay the amount required to obtain from the mortgage company a release of the mortgage as to the sixty acres.

In so far as it is material the foregoing is all of the testimony on the part of the respondent as to the payment of the $3,600.

On the part of the plaintiff, in rebuttal, the evidence was, in substance, that at the time of the trial W. Scott Neal was dead; that prior to his death he moved from Boise to Seattle; that before moving from Boise to Seattle he destroyed his business correspondence; a book marked on the outside "Farm Loan Register—W. Scott Neal" and contained a memorandum of the loan in question, marked "Loan No. 750," was admitted in evidence. In the column marked "Credits" in this book nothing is shown as having been paid on the principal of the loan. Deposit slips in Mr. Neal's handwriting, and the records of the bank where he did his business during the months of January and February, 1919, were admitted in evidence. They show no deposit of an item of $3,600.

The deposition of John Morbach was read on behalf of the appellant, by which the witness identified a copy of a certain letter written by the Prudential Insurance Company to respondent Folsom, dated January 2, 1922, and the same was admitted in evidence and is, in effect, a notice to the respondent that the insurance company had purchased the note and mortgage in question, and that their records show that the principal of the loan was $15,000, and advised him that payment of principal and interest should be made to it or the Vermont Loan & Trust Company, with offices at Spokane, Washington, and that receipts for such payment should be not considered valid unless signed by it or its officers, or the Vermont Loan & Trust Company, or its officers. He was asked if he found the figures correct, to sign and return a verification to that effect attached to the letter.

The depositions of Robert Grier Patton and Charles H. Wilson were offered and read in part, and objections sustained to certain questions and to certain exhibits offered in connection therewith. The sustaining of these objections is assigned as error, and will be discussed later.

The errors assigned by the appellant raise the following questions: The sufficiency of the evidence to establish payment of $3,600 to W. Scott Neal, and his authority to receive such sum on behalf of the mortgage company; and as to whether or not error was committed by the trial court in sustaining objections to the depositions of Robert Grier Patton and Charles W. Wilson, witnesses for appellant, and to the admission of certain exhibits in connection therewith.

It is also the contention of the appellant that the note in question is negotiable, and having been purchased in due course, without notice of any payment having been made to the mortgage company, it is entitled to recover the full amount of the principal.

C. S., sec. 6949, provides, in substance, that there can be but one action for the recovery of any debt secured by a mortgage, and that, in such action, the court, by its judgment, may direct a sale of the incumbered property and application of the proceeds of the sale to the payment of costs of the court and expenses, and the amount due the plaintiff; and if it appears from the sheriff's return that the proceeds are insufficient, and a balance still remains due, judgment can be docketed for such balance against the defendant or defendants liable for the debt. There seems to be but two of the states, so far as I have been able to ascertain, that have the same or similar statute to ours—California and Montana.

By a long line of decisions, beginning with the case of *Meyer v. Weber,* 133 Cal. 681, 65 Pac. 1110, rendered in 1901, down to the amendment of their statute in 1923, the courts of California have consistently held that a note and mortgage are to be construed together as constituting one instrument, and that the note being inseparably connected with the mortgage and affected by the conditions contained therein is not negotiable, if taken with notice of the existence of the mortgage. (*Kohn v. Sacramento R. Co.,* 168 Cal. 1, 141 Pac. 626; *Metropolis Bank v. Monnier,* 169 Cal. 592, 147 Pac. 265; *Pitman v. Walker,* 187 Cal. 667, 203

Pac. 739; *Stoner v. Security Trust Co.*, 47 Cal. App. 216, 190 Pac. 500.)

Montana has a line of decisions beginning with *Cornish v. Woolverton*, 32 Mont. 456, 108 Am. St. 598, 81 Pac. 4, holding promissory notes, negotiable on their face but secured by a mortgage given as part of the same transaction, non-negotiable.

The point has never been decided in Idaho, although the court in *Moody v. Morris-Roberts Co.*, 38 Ida. 424, 226 Pac. 278, cites the Montana case of *Buhler v. Loftus*, 53 Mont. 546, 165 Pac. 601, which follows the Cornish case, *supra*, and then says that it was not necessary to go to this extent in the case at bar. Nor is it necessary to so hold in the case at bar.

The legislature of this state, in 1925, amended C. S., sec. 5872, relating to negotiable instruments, by adding a new paragraph, designated paragraph 5, as follows:

"An instrument, otherwise negotiable in character, is not affected by the fact that it was, at the time of execution, or subsequently secured by a mortgage on real or personal property." (Sess. Laws of 1925, chap. 67, p. 97, approved February 25, 1925.)

█ By the record it appears that the note and mortgage in question were executed at the same time each being a part of one and the same transaction, and that afterwards and prior to the amendment of our statute, the note was indorsed and the mortgage assigned to the appellant, so there would seem to be no serious question but that the appellant was not a holder in due course, and that the same was not a negotiable instrument in its hands.

In regard to the deposition of George Grier Patton, the answers to the first ten interrogatories were read and were, in substance, to the effect that the witness was the general agent, living at Waco, Texas, of the American Freehold Land Mortgage Company of London, England, for 1910 to January, 1921, when the company sold its securities and went into liquidation; and at that time all correspondence relating to the company's business was destroyed; that he still

has in his possession a book entitled, "Record of Documents Executed for the American Freehold Land Mortgage Company of London, England," which is a book of original entries, made in the ordinary course of business as the transactions occurred; that the entries therein were made under his directions by various clerks in the office of the company, one being by Miss Mary Ross, who is now dead, and by others with whom he is now out of touch. Interrogatory No. 11, to which objection was sustained, was as follows: "Does this book show the execution by you of a release executed by you, on behalf of said Company, on February 12, 1919, from a lien of mortgage executed by the Lewis L. Folsom and Charlotte A. Folsom, husband and wife, to the American Freehold Land & Mortgage Company of London (England) Ltd., said mortgage being recorded in Book 64 of Mortgages, of Ada County, Idaho, on page 57, covering the following described property: The S.W. of S.W. and the W.½ of the S.E. of S.W.¼ of Section 24, Township 3 North, Range 1 E., B. M.?"

The book offered in connection with the deposition of Patton is a large book, having printed at the top of each page "Record of Documents Executed for the American Freehold Land Mortgage Company of London, England, by Richard Blakeway Ling, Robert Grier Patton and Glenn Gray Kendall," the pages having a number of ruled columns with the headings as follows: "Date Executed," "Nature of Loan," "Nature of Document," "In whose favor Executed," "Description of Property Referred to in Document Executed," with subheads: "County," "State," "Former Record Book," "Page," "Date," "Advised by Agent," "Remarks." In relation to the loan in question appears, under the column headed "Nature of Document," "Released," and in the column headed "Remarks," "approved, No Consideration."

This book was kept, and the memorandum made therein, unquestionably, for the convenience of the company and that alone. There are no charge and credit columns in the book, and it cannot possibly be considered as

an account-book, or, what is sometimes called a "Shop Book," and I am of the opinion that the same was not admissible as independent evidence, and could not be read or its contents stated to the jury. That the entry "No Consideration" is a mere memorandum of a special contract. It would have no place in an account-book, is hearsay, and falls within the refreshing memory rule, and could only be used for that purpose, and is governed by sec. 8033, C. S.

Interrogatory No. 11 was for the purpose of laying the foundation for the admission of this book in evidence. Appellant was not prejudiced by the ruling of the court in sustaining the objection to the question, and the court did not err in sustaining the objection to the admission of the book in evidence.

The exclusion of such book entries is sustained by the following authorities and cases: 22 C. J., p. 871, sec. 1046, and p. 893, sec. 1091; 4 Jones on Evidence, 2d ed., p. 3298, sec. 1787; 3 Wigmore on Evidence, 2d ed., sec. 1539; 1 Elliott on Evidence, pp. 549, 550, secs. 458, 459; *Security Co. v. Graybeal*, 85 Iowa, 543, 39 Am. St. 311, 52 N. W. 497; *Labaree v. Klosterman*, 33 Neb. 150, 49 N. W. 1102, 1104; *Proctor v. Proctor, Admr.*, 118 Ky. 474, 81 S. W. 272; *Wells v. Hays*, 93 S. C. 168, 76 S. E. 195, 42 L. R. A., N. S., 727.

The deposition of Charles A. Wilson was offered, and certain interrogatories and answers of the witness thereto read in evidence, and was to the effect that the witness was secretary and treasurer of the Anglo-American Farm Loan Corporation, whose office is in New York City, which company purchased the assets of the mortgage company; that he has in his possession the book of original entries of the American Freehold Land Mortgage Company of London, England; that the last-named company is not now in business but quit business when its assets were purchased by his company. Thereupon, he was asked the question, "Do the entries in said book appear to have been made in the ordinary course of business at the time the transaction occurred?" to which objection was made upon the

ground that the book had not been sufficiently identified; that the witness had not shown himself qualified to testify upon the question by reason of the fact that it is not shown that the witness has any knowledge of the book nor by whom it was kept; that he did not keep it himself; that it was not kept under his supervision or with his knowledge, and just came into his hands incidentally. The objection was sustained. Thereupon, it was agreed by counsel, for the purpose of saving time, that all remaining questions in the deposition should be considered read and the same objections interposed and sustained. The remaining questions and answers thereto were to the effect that the entries in the book were all in the handwriting of George W. Jones, of Waco, Texas, who had charge of these matters, and was assistant to the manager of the American Freehold-Land Mortgage Company of London, England, Limited, whose main office was in Waco, Texas. Photostatic copies of the pages of the book were offered, and objection sustained.

The book, as shown by the photostatic copy offered in evidence, gave the number of the loan, name and post-office address of mortgagor, name of agent, rate of interest, and was so ruled as to show date, principal, interest, principal credit, interest credit, date of credit, notes, and, in addition, contained a general description of instrument, names of maker, when and where recorded and other information relative to the loan, including the description of the property, insurance, value of buildings, etc. It is clear that this book has few, if any, of the characteristics of an account-book; and I am of the opinion that it is governed by the same rule as applied to that of the book offered in connection with the deposition of the witness Patton, and that the appellant was not prejudiced by the ruling of the court in sustaining the objection to the question contained in the deposition, and the court did not err in sustaining the objection to the admission of the book in evidence.

As to the sufficiency of the evidence to establish the payment of the $3,600 on the note, and the authority of

W. Scott Neal to receive the same on behalf of the Insurance Company:

The burden was upon the respondent not only to show that the $3,600 was, in fact, paid to W. Scott Neal, but also that he was authorized to receive it on behalf of the mortgage company. The fact that Mr. Neal had theretofore collected the interest on the loan, and that the principal and interest, by the terms of the note, were made payable at his office, would not constitute him the agent for the company for the purpose of receiving payment on the principal. However, in addition to the above facts, the testimony of the respondent Folsom was that he and Cleveland negotiated with Neal for the partial release of the mortgage upon the payment of said sum of $3,600; that the payment of said sum was acknowledged by Neal to have been made, and the release of the mortgage, as to the sixty acres, was, in fact, delivered to Cleveland. The only evidence introduced on the part of the appellant controverting the testimony of Folsom is of a negative character, and the fact of the payment having been determined by the finding of the jury, and the court having found in favor of the respondent as to the authority of Neal to receive such payment, I am of the opinion that under the well-established rule of this court, the judgment should be affirmed, with costs to the respondent.

The foregoing is approved as the opinion of the court and the judgment is affirmed. Costs to respondent.

Budge, C. J., and Wm. E. Lee and Varian, JJ., concur.

T. Bailey Lee, J., dissents.

Givens, J., did not sit.