### JOHNSTON v. GEARY et al.

No. 5089.   Decided June 20, 1934.   (33 P. [2d] 757.)

*Hurd & Hurd,* of Salt Lake City, for appellants.

*Badger, Rich & Rich* and *Arthur J. Mays,* of Salt Lake City, for respondent.

STRAUP, Chief Justice.

The plaintiff and respondent on a promissory note recovered a joint judgment against all of the three defendants and appellants in the sum of over $2,200, attorney's fees and costs. All of the defendants prosecuted a joint appeal from the judgment by serving and filing a joint notice of appeal, jointly transmitting and filing in this court a transcript of the record on appeal and filing in joint assignment of errors. To perfect an appeal under our statute, Comp. Laws Utah 1917, § 6997, requires an undertaking on appeal with at least two sureties to the effect that the appellant will pay all costs and damages which may be awarded against him on the appeal or a dismissal thereof, not exceeding $300. No such undertaking was given by any of the appellants. However, one of them, Mrs. Geary, an indorser of the note, for and on her behalf filed an affidavit of impecuniosity, as by sections 2577 and 6996, Comp. Laws Utah 1917, provided, in which case, "no bond on appeal shall be required." The affidavit was filed expressly for and only on her behalf and not for or on behalf of either of the other defendants, neither of whom had given an undertaking or filed an affidavit of impecuniosity.

For such reason a motion is made by the respondent to dismiss the appeal. It is based on the ground that, since the appeal is a joint and not a joint and several appeal from a joint judgment, and upon a joint and not a joint and several assignment of errors, and no attempt made to perfect the appeal other than by the filing of an affidavit of impecuniosity by one of the defendants, the appeal is not perfected in compliance with the statute in such case made and provided. It, of course, is conceded that to perfect an appeal requires, not only the service and filing of

a notice of appeal, but also the filing of an undertaking, or a waiver, or a deposit in lieu thereof, unless the party or parties appealing are by statute exempt from giving an undertaking. Otherwise the appeal is not perfected and this court without jurisdiction of the case. Elliott's Appellate Procedure, 449; *Town of Flagstaff* v. *Gomez*, 23 Ariz. 184, 202 P. 401, 23 A. L. R. 661; *Duncan* v. *Times-Mirror Co.*, 109 Cal. 602, 42 P. 147; *Robinson* v. *Templar Lodge No. 17, etc.*, 114 Cal. 41, 45 P. 998. While the motion to dismiss is not seriously resisted as to the two defendants not filing an undertaking nor an affidavit of impecuniosity, yet, as to the defendant, Mrs. Geary, who filed an affidavit of impecuniosity, the motion is especially resisted. Upon an examination of the authorities, we find the weight of authority to be that, where a joint appeal, and not a joint and several appeal, is taken by several defendants from a joint judgment, and upon a joint and not a joint and several assignment of errors, and the appeal not perfected by all of them, either by all giving or executing a joint or a separate undertaking, unless waived, or all filing an affidavit of impecuniosity, the appeal must be dismissed; the filing of an affidavit of impecuniosity by only one of the appellants being insufficient. *Tanquary* v. *Howard*, 35 Colo. 125, 83 P. 647; *Creswell* v. *Herr*, 9 Colo. App. 185, 48 P. 155; *Fuller* v. *Swan-River Placer Co.*, 5 Colo. 123; *Diamond Tunnel Gold & Silver Min. Co.* v. *Faulkner*, 14 Colo. 438, 24 P. 548; *Hopkins* v. *Satsop Ry. Co.*, 18 Wash. 679, 52 P. 349; *First Congregational Church of Harvard* v. *Page*, 255 Ill. 267, 99 N. E. 453; *Hileman* v. *Beale*, 115 Ill. 355, 5. N. E. 108; 8 Bancroft's Code Prac. and Rem. 8467.

These cases teach that, though parties may sever in their appeal, but in case of a joint appeal it must be so prosecuted, or the appeal must be dismissed. This court has not as yet directly passed upon the question, except by analogy, that, where several parties jointly assign errors, they will encounter defeat unless the assignment is good as

to all. *McGuire* v. *State Bank of Tremonton,* 49 Utah 381, 164 P. 494. Such doctrine generally finds support elsewhere. Elliott's Appellate Procedure, § 318; 3 C. J. 1352.

What may be said to be against the general rule as stated, that on a joint appeal by several appellants where only one gave an undertaking on appeal the appeal is not perfected and must be dismissed, is the case of *Meyer* v. *City of San Diego,* 130 Cal. 60, 62 P. 211. There two defendants, the city of San Diego and the Southern California Mountain Water Company, a corporation, jointly gave notice of appeal from a judgment rendered against them. No undertaking on appeal was given by either. On that ground a motion was made to dismiss it. It was granted as to the water company, but denied as to the city, for the reason that under the statute no undertaking as to the city was required. The holding thus was that as to the water company the appeal was ineffectual for any purpose, but as to the city, inasmuch as it was exempt from giving an undertaking, the appeal was upheld as to it. In so ruling the joint appeal was treated as though a separate appeal had been taken by the city, without considering the distinction between or the effect of a joint appeal and a separate or a joint and several appeal, as was considered in other jurisdictions and as shown by the cases heretofore cited.

There, however, is this further distinction between the Meyer v. City of San Diego Case and the case in hand. As recognized by all of the authorities, the requirement of security by all of the appellants is to protect the respondent against damages and costs, if the judgment appealed from be affirmed or the appeal dismissed. The principal reason exempting municipalities and the state from giving an undertaking on appeal is because of the ability of the municipality or the state without an undertaking to respond in whatever damages and costs may be incurred by the appeal in case the judgment is affirmed or the appeal is dismissed. Thus, where a municipality or the state appeals,

or is one of the appellants, without an undertaking on appeal, the respondent still is fully protected against damages and costs. But a proceeding in forma pauperis stands on a different footing. In jurisdictions, as here, though a statute authorizes appeals or proceedings in error in forma pauperis on filing an affidavit of poverty or inability to procure sureties, yet, where there are several appellants or plaintiffs in error, one on a joint appeal cannot alone make affidavit of poverty and appeal or bring error in forma pauperis. 3 C. J. 1125. The rule in such respect is well stated by the headnote in the case of *Walker* v. *Equitable Mortgage Co.*, 114 Ga. 862, 40 S. E. 1010, that:

"Where there are several plaintiffs in error in a bill of exceptions, an affidavit of inability to pay costs, made by any number of them less than all, is insufficient to bring the case to this court in forma pauperis. Nor, where such affidavit is signed by all of the plaintiffs in error save one, can it be made sufficient by striking from the bill of exceptions the name of the party who did not join in the affidavit, when the record shows that he was a party to the case in the court below."

In the case of *Ostrander* v. *Harper*, 14 How. Prac. (N. Y.) 16, the court said:

"It is not sufficient for one of several coplaintiffs to state his own inability to sue by reason of poverty. The poverty and inability must be shown to extend, and the leave must be granted, to all the plaintiffs. These applications are not favored, and the court will construe the statute strictly against the applicant. ([Moore v. Cooley & Blackman] 2 Hill [N. Y.] 412; [Isnard v. Cazeaux] 1 Paige [N. Y.] 40.)

"It would be in the last degree oppressive, to allow solvent and responsible plaintiffs to join a pauper with themselves in the action, and under his protection to prosecute a doubtful claim, harassing the defendant with litigation, and subjecting him to costs, from which they shall escape, if defeated; but ready to come in and share the fruits of the suit, if it can be made to yield any."

If a pauper has cause for appeal, and though it be considered he alone may appeal from a joint judgment rendered

against him and others, let him alone prosecute a separate appeal in forma pauperis, and not voluntarily unite in a joint appeal and in a joint assignment of errors with the hope or expectation gratuitously to carry his responsible and solvent companions for their benefit and advantage on proceedings in forma pauperis. Neither the letter nor the spirit of the statute is intended for any such purpose.

Let the appeal be dismissed. Such is the order.

EPHRAIM HANSON and MOFFAT, JJ., concur.

ELIAS HANSEN, Justice (dissenting).

In my opinion, the appeal should not be dismissed but the judgment should be affirmed on merits. It is urged on behalf of respondents, and the view is expressed in the prevailing opinion, that, because defendants served and filed a joint notice of appeal, and because two of them neither filed a bond on appeal nor an affidavit of impecuniosity, the appeal should be dismissed as to all of the defendants. While there seems to be some conflict in the adjudicated cases with respect to the effect of the service of a joint notice of appeal under a state of facts similar to those here presented, much of such apparent conflict disappears when considered in the light of the different statutes regulating appeals. The reason for the conflict is thus stated in 3 C. J. 1007:

"In some jurisdictions where a judgment or decree is rendered against parties jointly liable, or having a joint interest in the subject matter of the litigation, one of the parties may appeal or sue out a writ of error, although his coparties do not join. The general rule, however, requires a joinder in such a case, unless there is a statute to the contrary or the case falls within some exception to the rule. Statutory appeals, unless they are such as follow the practice on writs of error, or unless the statute expressly requires it, are not subject to the rule of joinder; and any party may appeal the whole cause whether the judgment against him is joint or several, when a statute provides that 'any party' aggrieved may appeal, or that an appeal shall be allowed of course from any judgment or decree."

We have a statute, R. S. Utah 1933, § 104-41-4, which provides:

"Any party to a judgment or decree may appeal therefrom."

Under the provisions of the statute just quoted, Mrs. Geary had a right of appeal without joining her codefendants as appellants either in the notice of appeal or in the undertaking or affidavit of impecuniosity required to perfect the appeal. Apparently in two of the jurisdictions from which cases are cited in support of the view that the appeal in the instant case should be dismissed, the courts by order fix the manner of perfecting the same. Thus in the case of *First Congregational Church of Harvard* v. *Page*, 225 Ill. 267, 99 N. E. 453, it is said:

"It has been repeatedly held by this court that the right of appeal is purely statutory, and that a party, to avail himself of such a right, must strictly comply with the order of the court granting the appeal, and when a joint appeal is prayed and allowed, all the appellants must sign the appeal bond, or the appeal, on motion, will be dismissed. *Hileman* v. *Beale*, 115 Ill. 355, 5 N. E. 108; *Tedrick* v. *Wells*, 152 Ill. 214; 38 N. E. 625; *Town* v. *Howieson*, 175 N. Y. 85, 51 N. E. 712; *Ellison* v. *Hammond*, 189 Ill. 470, 59 N. E. 966; *Fortune* v. *Gilbert*, 207 Ill. 235, 69 N. E. 857. It has also been held that, where a joint appeal has been prayed and allowed, if the appeal bond is signed by only one of the appellants, the appeal must be dismissed, and that the defect in perfecting the appeal cannot be cured by filing a new appeal bond in this court, which is signed by all the appellants."

To the same effect are the other cases cited in the prevailing opinion from Illinois as well as those from Colorado. It was held in the Washington case cited in the prevailing opinion that:

"Under Laws 1893, p. 122, § 5, providing that all parties whose interests are similarly affected by any judgment may join in the notice of appeal, which shall be served 'upon all parties who have appeared in the action'; and section 6, which provides that, unless an appeal bond be filed within five days after the giving of such notice, the appeal 'shall become ineffectual for any purpose,'—a joint notice of appeal by several defendants against whom judgment had been rendered conferred no jurisdiction, where the re-

quired bond was signed by only one of them, and did not purport to be for the benefit of the others, and such notice was not sevred on those who did not join in such bond."

The foregoing quotation is from the syllabus in the case of *Hopkins* v. *Satsop Ry. Co.*, 18 Wash. 679, 52 P. 349, and reflects the conclusion reached by the majority of the court. It will be observed that the statutes involved and the cases cited in support of the view that the appeal in the instant case should be dismissed are unlike our statute. On the contrary, the California statute granting the right of appeal, which was in effect at the time of the decision of the case of *Meyer* v. *City of San Diego*, 130 Cal. 60, 62 P. 211, was substantially the same as our statute. Such statute provided that:

"Any party aggrieved may appeal in the cases prescribed in this title." Fairall's Code of Civil Procedure, Ann. Calif. 1916, part 1, § 838, p. 1023.

It is the established doctrine in this jurisdiction that

"the right to an appeal is a constitutional, as well as a valuable right, and ought not to be denied except where it is clear the right does not exist, or has been lost or abandoned." *Boucofski* v. *Jacobsen*, 36 Utah 165, 104 P. 117, 26 L. R. A. (N. S.) 898.

In this case counsel for Mrs. Geary was also counsel for the other two defendants, and as such was the proper person to serve or be served with notice of appeal. Had Mrs. Geary filed a separate notice of appeal, service thereof could have been had upon counsel who appeared for her because he was also counsel for the other two defendants. By all of the defendants joining in giving notice of appeal the purpose of the notice was fully accomplished, and the situation is the same as if Mrs. Geary had appealed separately and given notice thereof to plaintiff and her codefendants. Mrs. Geary's codefendants, having joined in the notice of appeal, may not well be heard to say that they were without notice of appeal. The purpose of notice of appeal is quite unlike

the purpose of an assignment of error. The former is to advise the parties to the proceeding that an appeal has been taken, the latter in the nature of a pleading to advise the appellate court and the other parties to the cause concerning what is complained of. The purpose of an assignment of error being so unlike the purpose of a notice of appeal, the law applicable to the former would seem to be of little, if any, aid in determining the law applicable to the latter. Our statutes, R. S. Utah 1933, § 104-41-6, provide that an appeal may be perfected by appellant giving an undertaking, or, in case of impecuniosity, by making and filing an affidavit as by law required. The apparent purpose sought to be accomplished by that statute is to give to impecunious litigants an equal opportunity to prosecute an appeal as is afforded to those who are able to give the required undertaking. The fact that Mrs. Geary was unable to give an undertaking on appeal and was compelled to make and file in lieu thereof an affidavit of impecuniosity should not militate against her right to be heard on appeal.

In my opinion, the rule announced by the Supreme Court of California in the case of *Meyer* v. *City of San Diego*, supra, is sound, and, in the light of the similarity of our law and that of California with respect to appeals, should be followed in the instant case. Moreover, Mrs. Geary's codefendants have requested to be relieved of their default in failing to timely file an undertaking on appeal. It is within the discretion of this court to grant their request. To permit them to do so cannot prejudice the plaintiff. In my opinion, the request should be granted.

Plaintiff brought this action to recover upon a promissory note. The complaint is in the usual form of an action upon a promissory note. Defendants were sued as indorsers of the note. They filed separate answers. A trial of the issues raised by the pleadings resulted in a judgment in favor of the plaintiff for the amount owing upon the note together with an attorney's fee as provided for in the note and for

costs. Defendants appeal. A number of defenses were interposed by defendants, only two of which are relied upon by them for a reversal of the judgment. They contend: (1) That by their endorsement and transfer of the note to plaintiff they assumed no liability for the payment thereof, and (2) that, if they were ever liable as indorsers of the note, they were relieved from such liability because of the failure of the plaintiff to serve notice upon them of the failure of the makers of the note to pay the same. The note sued upon is negotiable in form. It was secured by a real estate mortgage which, among other things, provided that the mortgagor should pay the taxes on the mortgaged property. Defendant Edward G. Geary was made the payee of the note and the mortgagee in the mortgage. Plaintiff and defendants Edward L. Geary and Mrs. Edward L. Geary entered into a written contract for the exchange of some real and personal property. The note here involved was transferred to the plaintiff as part of the consideration which she was to receive in that transaction. Prior to the delivery of the note to plaintiff, the defendants, and each of them, signed his or her name on the back of the note. The mortgage which secured the payment of the note was assigned to the plaintiff. The written contract of plaintiff and defendants, Edward L. Geary and Mrs. Edward L. Geary, for the exchange of properties, contained, among others, the following provisions: Mr. and Mrs. Edward L. Geary agree to "convey (to plaintiff) by endorsement and assignment of interest, one certain promissory note and mortgage, together with accrued interest thereon." At the trial parol evidence was offered and received as to what was said at the time of the transaction for the exchange of properties by the parties with respect to the liability, if any, that Mr. and Mrs. Edward L. Geary were to assume as to the payment of the note involved in this litigation. Defendants Mr. and Mrs. Edward L. Geary testified, without objection, that they signed their names on the back of the note merely for the purpose of transferring their interests in the note to the plaintiff, and

that nothing was said about their guaranteeing the payment thereof. Ross C. Davis testified that he acted as agent for Mr. and Mrs. Edward L. Geary, and also for the plaintiff, in the transaction whereby they agreed to an exchange of properties; that during the negotiations he informed the Gearys that plaintiff was not familiar with the value of the property covered by the mortgage, and that she would not enter into the contract for the exchange of properties unless they (the Gearys) would guarantee the payment of the note. The testimony of the plaintiff is to the same effect. The testimony of Mr. Davis and plaintiff as to what was said with respect to guaranteeing payment of the note was received over timely objections and exceptions on behalf of defendants. The admission of such evidence is assigned as error. The trial court found that "the agreement and understanding between the plaintiff and the defendants Edward L. Geary and Mrs. Edward L. Geary at the time of their endorsement of the said note was that they, the said defendants, would guarantee payment of said note and that their endorsement would be unqualified." The foregoing finding is questioned by one of the assignments as being without support in the evidence.

Upon the question of notice given to the defendants Mr. and Mrs. Edward L. Geary of the nonpayment of the note sued upon, the evidence is as follows: Plaintiff offered evidence tending to show that, on the date the note became due, demand was made upon the makers thereof that they pay the same, but the note was not paid; that thereupon, and on the due date, the Deseret National Bank, where the note was made payable, prepared a notice informing the indorsers that the note was due and unpaid, and that the holder of the note looked to the indorsers for payment. Plaintiff's evidence further tends to show that one of such notices was addressed to Mr. and Mrs. Edward L. Geary at the address where they resided; that the address was written on the notice and placed in an envelope containing a slot or window in it; that the names and address could be seen through the

transparent portion of the envelope; that the envelope so containing the notice so addressed was deposited in the United States post office and the postage thereon prepaid. Defendants Mr. and Mrs. Edward L. Geary each denied having received the notice. The foregoing evidence is all that need be considered in determining the questions which divide the parties on this appeal.

Defendants here contend that the note in question was not negotiable because it was secured by a real estate mortgage, in support of which contention they cite the following cases: *Donaldson* v. *Grant,* 15 Utah 231, 49 P. 779; *Prudential Ins. Co. of America* v. *Folsom,* 48 Idaho 538, 283 P. 609; *Pitman* v. *Walker,* 187 Cal. 667, 203 P. 739; *Mathews* v. *Wilson,* 38 Cal. App. 148, 175 P. 647; *Stoner* v. *Security Trust Co.,* 47 Cal. App. 216, 190 P. 500; *W. P. Fuller & Co.* v. *McClure,* 48 Cal. App. 185, 191 P. 1027; *Central Savings Bank of Oakland* v. *Coulter,* 72 Cal. App. 78, 236 P. 956; *Cornish* v. *Woolverton,* 32 Mont. 456, 81 P. 4, 108 Am. St. Rep. 598; also note 32 L. R. A. (N. S.) 858, at page 862; and note 45 A. L. R. 1074, at page 1079. It is urged that, prior to the amendment of our Negotiable Instruments Law by Laws of Utah 1925, c. 2, p. 2, a note secured by a real estate mortgage in the hands of one who at the time he received such note knew it was so secured is not negotiable, notwithstanding such note is negotiable in form. It is further contended that the nature of the note in question as to negotiability must be determined by the law as it was when the note was executed. The note in question was executed prior to the amendment of 1925. Some of the cases cited by appellants support their position, while others are distinguishable from the case in hand. We, however, need not pause to determine whether the note here involved is or is not negotiable. A determination of that question would not necessarily be controlling in this case.

No issue is raised by the pleading involving the validity of the note. So far as is made to appear, the makers of the note are liable for the payment thereof. Nor is the right of

the plaintiff to sue on the note without foreclosing the mortgage given to secure its payment made an issue or questioned by the pleadings filed in the cause.

A blank indorsement consists of signing one's name on the back of the instrument. One who indorses a negotiable instrument in blank or without qualification warrants to all subsequent holders in due course: "(1) That the instrument is genuine and in all respects what it purports to be. (2) That he has a good title to it. (3) That all prior parties had capacity to contract. (4) That the instrument is, at the time of indorsement, valid and subsisting. And, in addition, he engages, that on due presentment it shall be * * * paid * * * according to its tenor, and that if it is dishonored and the necessary proceedings on dishonor are duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it." R. S. Utah 1933, § 61-1-67. By the weight of authority, one who indorses a negotiable instrument in blank may not show by parol testimony that he did not assume the liability of an indorser. Assuming for the moment that parol evidence is admissible to show that a blank indorser of a negotiable instrument did not assume the liability generally incident to such indorsement, still such holding would not aid the defendants. If parol evidence may be received to show an agreement was entered into whereby an indorser is to be relieved of the liability of an indorser, obviously parol evidence should be received to show the contrary, or to show what liability the indorser did agree to assume when he wrote his name on the back of the instrument. If, as is urged by appellants, the provision in the exchange contract whereby the Gearys agreed "to convey by endorsement and assignment of interest" the note and mortgage means something different from the usual liability of one who writes his name on the back of a note, then, and in such case, there is an ambiguity as to the agreement of the parties, and it was proper to admit parol testimony as to what was the actual agreement of the parties.

Nor are the defendants in any better position if the note be held to be nonnegotiable. In a technical sense an indorsement applies only to negotiable instruments. The adjudicated cases are in conflict as to the liability assumed by an indorser of a nonnegotiable note. "However, all the courts agree that a payee of a non-negotiable note may become liable as an endorser by expressing such intent in his endorsement or by inducing the assignee to take it by an agreement to that effect." 8 C. J. 58. In the contract for the exchange of properties defendants agreed to convey by indorsement and assignment of interest the note and mortgage. To hold that the defendants in that contract merely intended to transfer title to the note would be to disregard entirely the term "endorsement" which has a well-known meaning in law and in common use. Moreover, there is ample evidence to support the trial court's finding that the defendants were to be liable on the note if the makers thereof failed to pay.

A more serious question is presented with respect to the sufficiency of the notice of non-payment of the note. That question is put at rest, however, by the finding of the trial court that the Gearys guaranteed the payment of the note. By the weight of authority, notice to an indorser of the failure of the maker to pay a nonnegotiable note need not be given. 8 C. J. pp. 59, 60, and cases cited in the footnotes.

Assuming the note here in question was negotiable, still by what we conceive to be the weight of authority the Gearys waived their right to notice of nonpayment by guaranteeing the payment thereof. The law is thus stated in Daniel on Negotiable Instruments, vol. 2 (7th Ed. 1933) § 1259, p. 1309:

"It is conceded on all sides that a verbal waiver is as effectual as a written one; and the weight of authority sustains the proposition that a parol promise to pay the note absolutely, made by the indorser at the time he indorses it, or a promise to pay it if the maker does not * * * is admissible to prove a waiver of demand and notice. Such evidence is not offered for the purpose of varying the written

"contract of indorsement, which is simply to pay the note after exercise of due diligence against the maker, but to show that the parties have between themselves settled the amount of diligence to be required. It has been held differently, but the doctrine of the text seems to us more consistent with the principles upon which waivers are sustained."

Even though it be held that the notice of nonpayment which was mailed to the Gearys was fatally defective, still, on the findings of the court below that the Gearys guaranteed the payment of the note, the judgment appealed from should be affirmed, with costs to respondent.

STRAUP, C. J. (addendum).

A point is made that we may not take cognizance of the affidavit of impecuniosity filed by Mrs. Geary though transmitted by the clerk below with the transcript of the record on appeal to this court, because the affidavit was not a part of the judgment roll nor settled in a bill of exceptions and hence we may not judicially know that the affidavit was made alone for and on her behalf and looking alone to the certificate of the clerk below the language thereof "that the appellant has made and filed an affidavit as provided by Sec. 2577" etc., may refer to one appellant as well as another or include all of them.

If there is anything settled in appellate practice, it is that an appellant, to invoke jurisdiction of a cause, must show that he perfected an appeal. To do that he, under the statute, must affirmatively show the service and filing of a notice of an appeal and the giving of an undertaking on appeal for costs, or a waiver thereof, or the filing of an affidavit of impecuniosity as by the statute provided. Until that is done, no appeal is perfected and no jurisdiction invoked. Presumptions are not to be indulged that such things were done. The appellant is required affirmatively to show that they were done.

Of course, the notice of appeal is not nor is the undertaking or the affidavit a part of the judgment roll; nor to

show a memorial of them is it necessary to have them
settled in a bill of exceptions. Such documents or pro-
ceedings have nothing to do with either judgment
roll or bill of exceptions, and thus are not required to be
exhibited by either. They are documents requisite and
pertinent to the appeal, the one to show the taking of it, the
other the perfecting of it; and, unless the appellant shows
a perfected appeal, he has not conferred jurisdiction of the
cause on this court.

The statute, Comp. Laws Utah 1917, § 7008, provides that
upon an appeal being perfected the clerk of the court from
which the appeal is taken at the expense of the appellant is
required to transmit to the Supreme Court "the papers con-
stituting the record on appeal," the judgment roll, and the
bill of exceptions, if there be one. The statute further pro-
vides that he "shall also, in all cases, transmit to the Su-
preme court the notice of appeal, together with a certificate
of the clerk that an undertaking on appeal, in due form, or
a stipulation of the parties waiving an undertaking, or an
affidavit under §2577 (the affidavit of impecuniosity), has
been properly filed; and he shall annex to the papers so
transmitted a certificate  *  *  *  that they are the orig-
inal papers, or copies, as the case may be." In pursuance
of the statute the clerk of the court below certified that the
record so transmitted "contained all the original papers
filed in this court in the above entitled cause, including the
original Bill of Exceptions and Notice of Appeal, and copies
of the original orders of the court," and "I further certify
that the appellant has made an affidavit as provided by Sec.
2577 of the Compiled Laws of Utah 1917"; and in accordance
therewith transmitted to this court the notice of appeal and
also transmitted the affidavit filed on the appeal, which is
an affidavit of impecuniosity made, signed, and filed alone
by the defendant and appellant "Rachel P. Geary, otherwise
known as Mrs. Edward L. Geary, one of the defendants in
the above entitled action," wherein she averred "that owing
to my poverty I am unable to bear the expenses of the appeal

which I am about to take in the above entitled action," etc., which affidavit was filed by her the same day the joint notice of appeal of all the defendants was filed and transmitted to this court.

To now say that we may not take judicial cognizance of the affidavit so transmitted to us because it is not a part of the judgment roll, nor settled in a bill of exceptions, is but to say that we may not take judicial cognizance of the notice of appeal because it was not settled in a bill, nor of an undertaking on appeal or a certified copy thereof, transmitted to this court, because it was not settled in a bill.

I know that in the case of *Obradovich* v. *Walker Bros. Bankers,* 80 Utah 587, 16 P. (2d) 212, some statement is there made that an undertaking on appeal or an affidavit of impecuniosity in lieu thereof cannot be considered by us unless settled in a bill. But the cases cited in support thereof do not teach any such doctrine. They all relate to matters which to be preserved are required to be settled in a bill. On reading the cases it is clear they in no particular pertain to documents such as a notice or undertaking or affidavit on appeal. The function of a bill of exceptions is to make and preserve a record of proceedings and matters had and orders made in the cause below, not deemed excepted to without a bill, and not otherwise appearing by the judgment roll as defined by the statute. We all know bills of exceptions generally are prepared, signed, settled, and certified to before an appeal from the final judgment in the cause is taken. When thereafter an appeal is taken, no further bill is contemplated, unless some further proceedings were had or orders made in the cause in the court below. Otherwise the clerk below and not the court certifies to and transmits to this court the documents and papers thereafter filed on appeal. Though a certificate of the clerk be merely to the effect that "an undertaking on appeal in due form" or "an affidavit under Sec. 2577, was properly filed," and neither the undertaking nor affidavit transmitted

to this court, it cannot be doubted, if for any reason an inspection of either becomes necessary, that we may direct the clerk of the court below to transmit the original or a copy of the undertaking or affidavit to this court, notwithstanding neither was settled in a bill, or that we may not do so without direction that it first be settled in a bill. I think it clear that the statement in the Obradovich Case, that we may not consider or take cognizance of an undertaking or affidavit perfecting an appeal unless settled in a bill, was made inadvertently and was unnecessary to the point or question there considered, and hence was dictum. I see no good reason why it should now be followed and declared a rule of law or practice in appellate procedure.

But further as to this. At the same time the transcript of the record on appeal was filed in this court the appellant Mrs. Edward L. Geary made and filed in this court an affidavit of impecuniosity similar to that made and filed by her in the court below. That, too, was made and ■ filed only by herself and only for and on her behalf. We certainly can and should take judicial cognizance of all papers filed in this court. What effect may or should be given them may be another question. But surely no bill is necessary to inform us of the existence of papers so made and filed in this court.

But how stands the motion to dismiss the appeal if we are precluded from taking cognizance of the affidavit of Mrs. Geary filed in the court below when the joint notice of appeal was filed and both transmitted to us nor of the affidavit filed by her in this court when the transcript ■ of the record on appeal was filed, and are required to look alone to the certificate of the clerk of the court below that "the appellant has made and filed an affidavit as provided by Sec. 2577," etc.? Are we from the language, "the appellant," to indulge the presumption that each of the three defendants joining in the notice of appeal made and filed either a joint or a separate affidavit of impecuniosity? I ■

see no license for such a presumption, and then base a conclusion upon it that the appeal was perfected as to all of the appellants. None of the appellants made any such claim or contention. The motion to dismiss the appeal was presented and submitted by both parties on the theory that Mrs. Geary and she alone made and filed an affidavit of impecuniosity, and that neither of the other two defendants made or filed any kind of an affidavit or an undertaking on appeal. What the appellants in resisting the motion to dismiss contended for was that, though the judgment was joint, and though the appeal was a joint appeal by the three defendants, yet the affidavit alone by Mrs. Geary (1) perfected the appeal as to all of them; and (2) if the appeal was not perfected as to all, it was perfected as to Mrs. Geary, and thus the appeal should not be dismissed as to her though it be held the appeal was not perfected by either of the other two defendants and appellants. If the theory on which the matter was so presented and submitted is to be disregarded, and the question of perfecting the appeal looked alone to the language of the certificate that "the appellant" made and filed an affidavit, etc., then we are confronted with a patent ambiguity or uncertainty from which it cannot be ascertained which of the appellants on the appeal perfected the appeal, and hence it is not affirmatively made to appear that the appeal is perfected as to any of them.

For that and other reasons stated in the prevailing opinion I have expressed no opinion on the merits of the appeal.

FOLLAND, Justice.

I concur in the opinion of Mr. Justice ELIAS HANSEN. I also agree with the views expressed by Mr. Chief Justice STRAUP in his addendum opinion with respect to the right of this court to take cognizance of the record before us showing the filing of an affidavit of impecuniosity and no bond or similar affidavit by the other appellants.